THOMAS F. ADAMS, as Trustee for HARMON W. CROPSEY et al., Respondent, *v.* JUDSON LAWSON, Appellant.

EVIDENCE — WHEN DEFENDANT MAY PROVE, UNDER A GENERAL DENIAL, FACTS TENDING TO SHOW THAT FINAL PAYMENT IS NOT DUE UPON BUILDING AND LOAN CONTRACT. Where an action is brought to recover a final payment claimed to be due upon a building and loan contract, by which the defendant agreed to advance a certain sum toward the erection of a number of houses, such sum to be paid in installments as the work progressed, the defendant to have five days' notice of the completion of the work required for any installment, and the work to be approved by him before the payment of the installment, and if any of the materials or fixtures used in the construction of the buildings should not be purchased or paid for, so that the title thereto should pass upon the delivery thereof at the buildings, the defendant to have the right to withhold any further payments, and the complaint alleged the complete performance of the work in accordance with the contract, to which the defendant interposed a general denial, he is entitled to introduce evidence showing non-performance of the contract; that materials and fixtures were delivered under conditional contracts of sale, or subject to chattel mortgages; and that some of such materials and fixtures had been taken from the buildings with the knowledge or consent of the plaintiff subsequent to the giving of the notice of the completion of the work and during the five days allowed the defendant by contract to ascertain whether the buildings were in such a condition as to warrant him in making the final payment.

*Adams* v. *Lawson,* 112 App. Div. 886, reversed.

(Argued April 5, 1907; decided May 21, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme ·Court in the second judicial department, entered March 6, 1906, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John P. Everett* for appellant. It was established that respondent had not substantially performed his contract and the verdict was, therefore, against the law and the weight of evidence. (*Glacius* v. *Black*, 50 N. Y. 145; *McIntosh* v. *Rector, etc.*, 120 N. Y. 12; *Flaherty* v. *Minor*, 123 N. Y. 388; *Hammann* v. *Jordan*, 129 N. Y. 67; *Van Clief* v. *Van Vechten*, 130 N. Y. 579; *Hollister* v. *North*, 132 N. Y. 18; *Crouch* v. *Gutman*, 134 N. Y. 51; *Miller* v. *Benjamin*, 142 N. Y. 617; *Desmond* v. *Friedman*, 162 N. Y. 490; *Spencer* v. *Ham*, 163 N. Y. 226.) The plaintiff failed to prove compliance with the conditions precedent to payment under the terms of the building loan agreement, and the complaint should have been dismissed. (*Fogg* v. *S. R. T. Co.*, 90 Hun, 274; *Oakley* v. *Morton*, 11 N. Y. 25; *Smith* v. *Brady*, 17 N. Y. 179; *Lauer* v. *Dunn*, 115 N. Y. 405; *Stevens* v. *Ogden*, 130 N. Y. 182; *Weeks* v. *O'Brien*, 141 N. Y. 199; *Bates* v. *S. S. N. Bank*, 157 N. Y. 325; *Mansfield* v. *Mayor, etc.*, 165 N. Y. 215; *Murphy* v. *B. Sav. Bank*, 39 Hun, 46.) The appellant's exceptions are meritorious, show reversible error and hence the judgment cannot be upheld, but must be reversed. (*Benton* v. *Hatch*, 122 N. Y. 322; *Milbank* v. *Jones*, 141 N. Y. 340; *S. M. E. Church* v. *Humphrey*, 142 N. Y. 137; *F. L. & T. Co.* v. *Siefke*, 144 N. Y. 358; *Griffin* v. *L. I. R. R. Co.*, 101 N. Y. 348; *Brady* v. *Hutkoff*, 34 N. Y. Supp. 945; 155 N. Y. 681; *Moore* v. *Taylor*, 42 Hun, 45; *Wharton* v. *Winch*, 141 N. Y. 293; *McCready* v. *Lindenborn*, 172 N. Y. 408; *Jones* v. *City of New York*, 57 App. Div. 406.) The evidence is that appellant did not waive the covenant requiring a five days' days' notice for a payment due thereon. (L. 1897, ch. 418; L. 1890, ch. 78.)

*Melvin G. Palliser* and *Hector M. Hitchings* for respondent. Although the building loan required the work done on the buildings to meet the approval of Mr. Lawson before a payment could be exacted, yet such approval could not be withheld captiously or unreasonably, and, if the work was so advanced that Lawson ought to have approved, his refusal to approve furnished no justification for his refusal to make a payment when demanded and no ground of defense. (*McK. F. S. Co.* v. *Mayor*, 160 N. Y. 72; *Doll* v. *Noble*, 18 Abb. [N. C.] 45; *Cross* v. *Belknap*, 24 Wkly. Dig. 256.) Defendant's positive and unequivocal refusal on October fourteenth to make any further payment on the contract relieved the plaintiff from giving him any further notices or making any further demands. (*Bunge* v. *Koop*, 48 N. Y. 225; *Bauman* v. *Pinckney*, 118 N. Y. 616; *Thomas* v. *Stewart*, 132 N. Y. 580.) Defendant was necessarily limited on the trial to the grounds of his refusal to make payments stated by him when such payments were demanded and he refused to make the same. (*Fallon* v. *Lawlor*, 102 N. Y. 228; *Thomas* v. *Stewart*, 132 N. Y. 584.) The exceptions taken to the refusal of the trial justice to allow defendant to probe into what occurred to these buildings after defendant had broken his contract and this action had been begun are clearly frivolous and the rulings entirely correct. (Code Civ. Pro. § 501; *J. C. Co.* v. *Clark*, 77 Hun, 466; *Vanderslice* v. *Newton*, 4 N. Y. 130; *Lord* v. *Spelman*, 29 App. Div. 292; *Smith* v. *L. V. R. R. Co.*, 177 N. Y. 379.)

Edward T. Bartlett, J. The plaintiff, as trustee for the benefit of certain creditors, seeks in this action to recover damages for the alleged breach of a building loan agreement.

The Appellate Division having unanimously determined that there is evidence supporting or tending to sustain the verdict of the jury, we are precluded from examining any question of fact.

A statement of a few of the undisputed facts will render clear the questions of law presented by this appeal. On the

6th of February, 1902, the defendant sold and conveyed to Dawson B. Hilton and Gustave Levy certain vacant lots in the borough of Brooklyn.   On even date with this transaction Hilton and Levy entered into a written building contract with the defendant whereby they agreed to erect upon the premises so conveyed to them ten houses, according to certain plans and specifications, and the defendant covenanted to advance from time to time a sum aggregating twenty-five thousand dollars, being twenty-five hundred dollars on each house, under conditions not necessary to state at this time. Hilton and Levy, after proceeding under this contract for a time, became financially embarrassed and assigned their interests in the premises to the plaintiff, Thomas F. Adams, as trustee for the creditors set out in the complaint in this action. The defendant assented in writing to this transfer. to the plaintiff Adams, subject to certain provisions, and extended the time of completion of the buildings called for in the building loan agreement for the period of ten weeks from July 26th, 1902.

On the same day the defendant and the plaintiff entered into a further agreement in writing whereby the plaintiff agreed to take over from Hilton and Levy a deed of the premises conveyed to them by the defendant and an assignment of their interests in the building loan agreement; and the plaintiff also agreed to use his best endeavors to procure the discharge of all mechanics' liens filed against said buildings and to comply generally with the conditions of the building loan agreement.   On the same day the plaintiff entered into an agreement with six of the creditors of Hilton and Levy, wherein they agreed to discharge certain mechanics' liens and continue under the contract.   On the 10th of October, 1902, the defendant and the plaintiff stipulated that the contract time for carrying out the agreement should be extended to the 24th of October, 1902.

The two provisions of the contract having an important bearing upon the exceptions presented by this appeal are the following: The "Third" subdivision of the contract reads, in

part, as follows: "*   *   * or if any materials, fixtures or articles used in the construction of said buildings or appurtenant thereto be not purchased by the parties of the second part so that the ownership thereof will vest in them on delivery at said buildings, that then or on the happening of either or any of said events, said party of the first part may refuse to advance any sum called for by this agreement beyond those advanced at the time of the happening of such event, etc.   *   *   *"

Subdivision "First," paragraph 5th of the contract reads as follows: "That when the respective stages of completion of said buildings shall be respectively reached by the said parties of the second part, before they shall be entitled under this agreement to receive the installment before provided to be paid under such respective stage of completion, they shall notify the said party of the first part at least five (5) days beforehand of the fact that they are ready for a payment, and the approval of the said party of the first part first had as to the work done before such payment or payments is or are made."

As before stated, the time for the performance of this building contract was extended until Friday, the 24th of October, 1902. On the evening of that day the defendant was notified over the telephone by the plaintiff's attorneys that the last payment under the contract was due, being the sum of thirty-five hundred dollars. There was a conflict in the evidence as to the nature of this colloquy over the telephone, but with that we have no concern. There is no dispute as to the attorneys for the plaintiff having made this demand. Thereupon the time was set running under the above-quoted clause of the contract, which provided that the contractors were to notify the defendant "at least five (5) days beforehand of the fact that they are ready for a payment, and the approval of the said party of the first part first had as to the work done before such payment or payments is or are made." This provision must be construed as a further extension of the time for five days after the payment is actually due, according

to the terms of the contract, in order to enable the defendant to ascertain by deliberate examination whether there has been such a completion of the contract as requires him to make the payment sought to be collected.

It is undisputed that the plaintiff, Adams, was a clerk in the office of his attorneys and that Mr. Hitchings of that firm was practically in control of his interests, as was quite natural under the circumstances. It is also undisputed that mechanics' liens for a large amount were filed on Saturday morning, the 25th of October, 1902.

This action was subsequently commenced to recover, not the final payment due under the contract of $3,500, but for damages in the sum of $9,500 and interest from the 25th of October, 1902. The defendant's answer, after several admissions as to facts not controverted, was substantially a general denial, the complaint having alleged full performance on the part of the plaintiff. The jury rendered a verdict apparently for the final payment of $3,500 with interest and judgment was entered for that amount, with costs.

At an early stage of the trial the question was sharply presented as to the character of evidence that the defendant was entitled to introduce under his general denial. The complaint in brief was the allegation that the plaintiff had performed the building contract on his part; that the final payment of $3,500 was due on the 24th of October, 1902, and by reason of defendant's default he was damaged in the further amount of $6,000. The answer denies these allegations; in other words, the defendant asserts that the final payment of $3,500 was not due by the terms of the contract on the 24th of October, 1902, and that he was entitled to sustain that general denial by competent evidence. The question now presented is whether his right in this regard was improperly limited by the trial judge, thereby excluding from the consideration of the jury evidence that might have led them to a different conclusion.

In the case of *Farmers' Loan & Trust Co.* v. *Siefke* (144 N. Y. 354, 358) Chief Judge Andrews said: "But as

the pleading stood the question whether the defendant had executed a sealed instrument was an issuable fact which was asserted upon one side and denied upon the other and which the plaintiff was bound to establish as a part of his case. The defendant under a general denial may adduce evidence to controvert what the plaintiff is bound to prove in the first instance (*Milbank* v. *Jones,* 141 N. Y. 345, and cases cited), and the general rule is well established that whatever a plaintiff is bound to prove in the first instance as a part of his case he is bound to establish by a preponderance of evidence." (*Wheeler* v. *Billings,* 38 N. Y. 263; *Schwarz* v. *Oppold,* 74 N. Y. 307; *Griffin* v. *Long Island R. R. Co.,* 101 N. Y. 354; *Gilman* v. *Gilman,* 111 N. Y. 265, 270.)

In *Benton* v. *Hatch* (122 N. Y. 322) it was held that under an answer denying the allegations of the complaint in an action of ejectment, the defense of want of title in plaintiff is admissible.

The defendant was desirous of proving the non-performance of the contract; that the clause already cited providing in substance that where the materials, fixtures or articles used in construction were not purchased so that the ownership thereof would vest in the contractors on delivery at the buildings, he was entitled to refuse performance on his part. The defendant further desired to show that there had not been full performance of the contract; that materials, fixtures and articles were delivered under conditional contracts of sale prior to the time of performance; also that certain materials, fixtures and articles had been removed from the buildings prior to the 24th of October, 1902, and subsequent thereto during the five days allowed the defendant by contract to ascertain whether the buildings were in such a condition as to warrant him in making the final payment.

After some ineffectual efforts the defendant was permitted to make this offer: " We desire to prove that these houses were never finished; that when we went into possession they were destroyed, the mantels were torn out and the houses were practically taken apart under the instructions of Mr. Hitch-

ings by written communication to each creditor." Before ruling upon this question there was a colloquy between the court and counsel for both parties. Mr. Hitchings said: "What took place subsequent to the 26th of October had absolutely nothing to do with this action." It will be observed that the plaintiff's counsel took the position that notwithstanding the defendant had been allowed five days in order to ascertain whether the final payment was in fact and in law due, yet he was practically to be deprived of his rights, although he had the entire day of October 29th in which to decide as to his legal rights. A long discussion followed between court and counsel, in which the plaintiff's counsel insisted that this proof was not admissible under a general denial. Thereupon the defendant offered to amend by setting up affirmatively such matters as he desired to prove, stating that he cared nothing for a counterclaim as he did not think it collectible. The latter suggestion was apparently made by defendant's counsel in view of the statement of the trial judge that he could not set up a new cause of action. The offer of proof and the offer to amend, the latter being wholly unnecessary, were overruled and the defendant duly excepted.

If the defendant had been able to prove that these houses were not finished on the 24th of October, or if he could have established the fact that there were materials and fixtures placed therein prior to that day under conditional bills of sale, he was entitled to do so under his general denial. Furthermore, he should have been allowed to prove, if he could, all that happened during the five days succeeding the 24th of October; he was also entitled to prove, if possible, that certain parties had been requested by plaintiff's counsel, either verbally or by letter, to exercise their supposed right of removal from the buildings of materials or fixtures either before the 24th of October, or during the five days next succeeding; also to have shown, if he could, that mantels and other fixtures and materials were forcibly removed from said buildings during the period aforesaid.

One of the plaintiff's counsel admitted, upon the stand,

that there were conditional bills of sale. He was asked this question : "Do you know which of these materialmen had conditional bills of sale?" This was objected to, but allowed. The answer was: "I can give some of them; I don't know that I could give them all. Mr. Donovan, his material was in there; the plumbing, ranges, mantels, tiling, gas fixtures; that is all I recollect at the present time." The witness subsequently stated that he knew these materials under such conditional bills of sale were less than $3,500 in value, the amount of the final payment. As to this question of the amount of property furnished under conditional bills of sale and its value the defendant was entitled to introduce proof, as the witness only dealt in general terms as to the materials and fixtures involved.

Donovan, above alluded to, when on the stand, was asked this question : "After getting the chattel mortgage or the conditional bill of sale, did you subsequently remove the plumbing work? Objected to as incompetent, immaterial and irrelevant," and the defendant excepted. The defendant sought to prove by Mr. Hitchings, when on the stand, that he had knowledge of the removal of furnaces; he was asked whether he had ever written a letter in which he had referred to the removal of these furnaces; or whether he had ever written any letter on the subject whatsoever. All of these questions were ruled out as irrelevant and immaterial and exceptions taken.

We are of opinion that the ground covered by this offer and the exceptions to specific questions that were overruled involve subjects concerning which this defendant was entitled, under the general denial, to adduce such proof as he had tending to controvert those facts that plaintiff was bound to prove in order to establish his cause of action.

The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

O'BRIEN, J. (dissenting). The material facts in this case may be stated very briefly. The plaintiff had a building contract

to build ten detached houses in Brooklyn on land which the defendant had conveyed to the plaintiff's assignors in consideration of the sum of twelve thousand dollars. Coupled with this transaction the defendant agreed in writing to make a building loan of twenty-five thousand dollars, to be used in the construction of the houses, and in order to secure the defendant for his advances on the contract there was a building loan mortgage in favor of the defendant. Under the contract the defendant was to make advances of money from time to time as the work progressed. There is no controversy in regard to any of these advances except the last one which was due and payable upon completion of the houses. That payment, assuming it was due, amounted to thirty-five hundred dollars, and that sum the plaintiff has recovered upon the verdict of a jury.

The buildings were by the terms of the contract as extended to be completed on the 24th of October, 1902. The contract contained a provision that the defendant should be entitled to five days' notice that a payment should be required by the plaintiff, the builder. The effect of that provision is that, although the builder had become entitled to the payment by reason of the fact that the houses had reached the stage of completion provided by the contract, yet the defendant should have five days after the notice within which to make the payment. This provision applied to all the payments provided by the contract, as well as to the final payment, which is the only one with which we are concerned in this case. The contract provided that the payment which the plaintiff has recovered in this case should be made when the houses were completed ; and the fundamental questions in the case were whether the plaintiff had in fact performed his contract of completing the houses, and whether the defendant had waived the provision which gave him five days in which to make the payment.

There was much testimony given at the trial bearing upon the question whether the houses had been completed according to the contract. There was also testimony given to show that the defendant had waived the provision as to five days'

notice referred to by notifying the plaintiff before the time had arrived that he would not make the final payment, that he had put all the money into the houses that he intended to, and in fact stated that he would foreclose his mortgage on the property. It is, I think, to be inferred from what appears in the record, and in the briefs of counsel, that either before or since the commencement of this action the defendant had instituted proceedings to foreclose the mortgage and thus acquire title to the property. The learned judge at the trial submitted two questions to the jury, first, whether the plaintiff had completed the construction of the houses under the contract; and, secondly, whether he had waived the provision which gave the defendant the five days within which to make the payment. The judgment entered in the plaintiff's favor upon the verdict of the jury has been unanimously affirmed at the Appellate Division and, hence, the two fundamental facts in the case are conclusively established so far as this court is concerned. It is unnecessary to cite authorities in support of that proposition. This court is irrevocably committed to the doctrine that even if the evidence in the case on these questions was overwhelmingly in the defendant's favor, we are bound to assume that the verdict upon the facts and as to the general merits of the case is correct.

We need not, therefore, look into the evidence for light upon questions thus established. The learned trial judge gave the jury very full and fair instructions with respect to these questions. They were told that unless the houses were completed in substantial conformity to the contract that their verdict should be in favor of the defendant, but that if upon the evidence it appeared that they were substantially completed then so far the plaintiff was entitled to recover. He also instructed the jury that the defendant was entitled to the five days provided by the contract to make the payment after the completion of the building unless the defendant had waived that provision by notifying the plaintiff in advance that he did not intend to make the payment and would not as he had already put into the houses all the money he intended to.

The defendant is, therefore, concluded by the verdict of the jury on the questions litigated, namely, whether the houses were completed, and whether there was a waiver of the five days' provision in the contract.

There is nothing of the case left for review in this court save only the exceptions taken by defendant's counsel on the trial arising upon rulings of the court. There are some exceptions in the record taken to the charge of the court to the jury, but they are not argued by the learned counsel for the defendant either orally or upon his brief, and hence I conclude that the counsel did not intend to raise them. If they were before us for review it is obvious that they are without merit, and so it may be assumed that the only questions presented by the record are the exceptions taken at the trial to rulings upon matters of evidence.

These exceptions relate to a feature of the case that is liable to mislead the mind, as it evidently has misled the defendant's counsel. In general terms that feature of the case may be stated as follows : It is said that the contract provided that the houses should be passed to the defendant without liens or claims of that character ; that some of the materials that went into the buildings were purchased under conditional sales which were to the effect that the title should remain in the seller until the goods were paid for, and that some time after the 24th of October, the day which by the verdict of the jury the plaintiff completed the contract, certain parties entered the house and took therefrom mantels set into the walls and other things of that character which were delivered upon conditional sales. Whatever evidence there is in the case or which was offered is involved in much confusion and obscurity. It is impossible to tell from the record when this looting, as it is called by the defendant's counsel, happened or who the parties were that engaged in it. This defense, if it be one, is very vague as to the time, place or person. It is very difficult to state the details of these transactions from anything that is presented on the argument. Nothing of that kind appears from the defendant's answer ; that pleading did put

in issue the plaintiff's claim that the houses had been completed, but, as already stated, the verdict of the jury has determined that question in favor of the plaintiff.

It seems to me that the vague and very confused claim of the defendant in regard to what is called "looting" proceeds from a mistake as to the law or the facts, or both. A conditional sale of material to be used in erecting a building cannot very well be conceived of after it has been used and attached to the structure. When the houses in question were completed they became a part of the real estate. The right of the seller upon a conditional sale could not in the nature of things exist only up to the time when the personal property was transformed into real estate. If a dealer in brick, stone or iron should sell these materials to a builder and the builder had used them in the construction of a house, the seller could not well reclaim them upon the idea that the sale was conditional and the title did not pass upon such a sale. If the seller permitted them to be used in the construction of a building he would not be entitled to pull down the building in order to reclaim some of the materials used in its construction. He may of course file a lien for these materials, but if he could tear down the structure, whether it be great or small, on the claim that the sale was conditional, then obviously the statute in regard to liens was unnecessary. The seller of materials could always, according to the defendant's contention, make a conditional sale, and if payment was not made at the time agreed upon he could pull down the house and reclaim the materials no matter who the owner was. If these houses were looted, as the defendant claims, then it must have been done by some one who was a trespasser, since it could not in any legal sense be done by the person who furnished the materials upon a conditional sale; and yet it is upon some such notion as has here been outlined that the defendant relies for a reversal of the judgment. Of course if the plaintiff had completed the houses, as the jury found, on the 24th of October, the law day prescribed in the contract, then he is not responsible for any wrongs or trespasses that may have

been committed by third parties subsequently. So that it seems to me the contention of the defendant that the plaintiff is in some way responsible for the wrongs or trespasses of third parties is based upon a fundamental error.

The only exceptions argued by the defendant's counsel, or to be found on his brief, relate to this particular question. He complains that he was not permitted to go into the facts to show, as he says, that the houses were looted. Who did the wrong, or when, and to what extent, if at all, are questions that are not disclosed by the offers or the record in such a way as to enable us to deal with the question, if it is at all involved in the case. It will be entirely fair to the defendant to review the exceptions as they appear upon the briefs of his counsel. In the third point of the defendant's counsel's brief there was an offer to prove certain things. It reads as follows: " We desire to prove that these houses were never finished; that when we went into possession they were destroyed, the materials were torn out and the houses were practically taken apart under the instructions of Mr. Hitchings by written communications to each creditor." So far as this is an offer to prove that the houses were never finished that question was fully litigated and submitted to the jury. Then the offer is in regard to certain things " when we went into possession; " that is, that the houses were destroyed, the materials were torn out and the houses were practically taken apart under the instructions of Mr. Hitchings by written communication to each creditor. Now Hitchings was not a party to this action. The plaintiff was not responsible for Hitchings in any way, and then it is said all this was done by a " written communication." I think that the trial court very properly refused to listen to a mere offer so vague and extravagant and so foreign to the issues involved. Moreover, it called for the contents of a written communication, and if the contents were at all material the writing should have been produced or accounted for. The offer to show a state of things existing when the defendant went into possession, without stating when such possession was begun, was properly rejected.

If this class of evidence was admissible at all it should have been confined to a time anterior to the completion of the houses, as found by the jury, on the 24th of October. In the same point the counsel for the defendant contends that a series of questions put to Mr. Hitchings when he was on the stand should have been admitted. These questions were in substance as follows: Whether any one ever told him that the furnaces had been removed, and whether he ever wrote a letter in which he referred to the removal of the furnaces, or whether he ever wrote any letter on that subject. I am unable to perceive the relevancy of these questions. They call for hearsay statements at best, and also for the contents of some letter that the questions assumed the witness had written to some one at some time. So far as this record shows, at most there was an attempt on the part of the defendant's counsel to show in some vague and loose way that some one not named, at some time not specified, did certain things by which the houses were destroyed and practically taken apart. The defendant's fourth point is simply a statement that the defendant did not waive the provisions of the contract regarding a five days' notice for payments due thereon. All that is necessary to say in regard to that point is that the proofs show that the defendant notified the plaintiff in advance that he would make no further payment on the contract. The jury found that the defendant took that position and they were instructed by the court that under such circumstances they might find that the notice had been waived. I take it to be elementary law that when a contract provides for a notice that the payment of money at a certain time will be insisted on and a notice is given by the person bound to pay to the person entitled to receive it that the former does not intend to pay and will not pay, he may be taken at his word and held for a breach of the contract, and the formalities prescribed by the contract at the time of payment, such as notice that it will be received as in this case, are waived. It would be an idle ceremony on the part of the plaintiff, after the defendant had given notice that the final payment would not be made, to

give the notice and wait five days for the defendant to comply with the provisions of the contract, when he had already taken the position of ignoring all obligations ·on his part to make the payment. Whether the defendant had taken such position was a question for the jury, and the finding in the plaintiff's favor, unanimously affirmed, is conclusive on this appeal.

I have now referred to all the exceptions argued or presented on the brief of the learned counsel for the defendant. No exception taken to the charge is argued or discussed in any form, and, therefore, it must be presumed that they are abandoned. All we have is a general statement to the effect that all the exceptions taken to the charge or refusal to charge are a good and sufficient reason for the reversal of the judgment. Such a general and sweeping assertion in regard to the charge does not call for much discussion. If the trial judge committed error in that respect the defendant's counsel should have put his finger upon the point and not left it to this court to grope its way through a record in order to find some error upon which to disturb the judgment. There are, however, one or two paragraphs in the charge which may be noticed since they show very clearly the principle upon which the case was tried and submitted to the jury. The learned trial judge said : " It has crept into this case that after the 25th of October some of these persons who had furnished material went in and took out mantels and other things. That does not affect the verdict in any way in this case. The question is were the buildings completed on the 24th ? If so, the plaintiff can recover. If not, he cannot recover. In respect to small things that were unfinished that might reasonably, naturally be overlooked or incompleted in so large a contract as this — if you find there was a substantial completion in the case, then you may come to the conclusion that the plaintiff is entitled to recover." The other proposition of the learned trial judge is as follows : " Now in respect to the liens in this case ; the testimony is they were filed on that night or the next morning — the night of the 24th or the next morning. If you find that the defendant absolutely

refused, made an absolute refusal to pay and at the time he did there were no mechanics' liens upon this property and the work was at that time finished, then the plaintiff's cause of action was complete and the mechanics' liens afterwards put upon the property, if there was an absolute refusal upon his part, would not affect the plaintiff's right to sue and recover in this action."

It is assumed in the prevailing opinion that the date for the completion of the houses was the 29th of October instead of the 24th of October. It seems to me that this assumption entirely ignores the record. This date is fixed by adding the five days to the law day provided by the contract, which was October 24th. The provision in regard to the five days was simply this: It required the plaintiff to notify the defendant five days beforehand of the fact that he was ready for a payment. Plainly this called for some action on the part of the plaintiff; that is, he was required to give notice that he was ready to receive the payment. He did not give the notice for the reason that the defendant had waived it. This provision of the contract was not an agreement to pay money, since that was provided for in the original agreement; but it was a stipulation that the plaintiff should give a certain notice. Surely the defendant could waive the right to such notice, and the question was submitted to the jury to find whether he did or not, and the finding was that he had waived it, and that finding has been unanimously affirmed, and yet the prevailing opinion treats the question as if the jury had found the other way. The question whether the law day was the 24th of October or the 29th is a vital question, but it seems to me that it is settled by the verdict of the jury, unanimously affirmed. The jury found that the plaintiff was not obliged to give the notice after he had been informed by the defendant that no further payment would be made. To say that after this declaration on the part of the defendant the plaintiff was still bound to give the notice, is to say that he was bound to do a vain thing.

The other point in the case relates to the materials which it

is said that the plaintiff or the builder procured under conditional sales. It is assumed that such sales affected the title to building materials after they had been attached to the real estate and entered into the construction of the building. It has already been pointed out that the condition attached to the sale, if there was such a condition, ceased to have any operation or effect after the materials had been used in the structure. So we come back again to the fundamental question whether the houses were completed on the 24th of October. That question was one of fact and was submitted to the jury, and the finding was in favor of the plaintiff, and having been unanimously affirmed it is not open to discussion here. What happened afterwards has no bearing on the case. If the plaintiff completed his contract on the 24th of October the acts of third parties in tearing out mantels or in pulling the houses apart, if they ever occurred, had nothing to do with the issues in the case. I have not been able to find in the record, nor in the prevailing opinion, any offer to prove any fact tending in the least to show that the houses were not completed on the 24th of October, which was rejected by the trial judge. That, it seems to me, is the crucial question in the case. Offers made to show what happened subsequent to the 29th of October, if made, were properly excluded. If proof of any fact occurring prior to the 24th of October tending to show that the houses were not completed on that day had been excluded at the trial, I admit that it would be error. But the record does not disclose any such ruling at the trial, and I am unable to find that anything of that kind has been pointed out in the prevailing opinion.

Any liens that attach to the property at any time must be measured by the sum found due from the defendant on the contract ; that is to say, the lien attached to the money due or payable as the final payment. There is no evidence in the case that any lien was filed against the property after the plaintiff took over the contract and prior to the completion of the work on the 24th of October. If the contrary was claimed in behalf of the defendant, then the attention of the

court should have been called to it at the trial, and, if necessary, the question submitted to the jury; but no request of that character was made by the defendant's counsel. The whole case was allowed to go to the jury without any request made in behalf of the defendant. I think that the record in this case does not present any question of law that this court is authorized to review, and the judgment should, therefore, be affirmed, with costs.

Cullen, Ch. J., Haight, Vann, Hiscock and Chase, JJ., concur with Edward T. Bartlett, J.; O'Brien, J., reads dissenting opinion.

Judgment and order reversed, etc.