dismiss the appeal, which by order entered December 27, 1912, was granted, unless appellant procured return to be filed and case printed and served and filed, and the cases on the calender for argument, one on January 13, and the other on January 22, 1913. Up to these dates no case was served, and appellant now moves for additional time to have the cases on the calendar ready for argument. He bases this application on the fact that one of the official stenographers was in Europe during the summer, and that it was therefore impossible to obtain the minutes, and for that reason appellant could not prepare the case.

In answer to the allegation, it appears that the official stenographer was not in Europe, that the appellant could have obtained the stenographer's minutes at any time, and that no order was given for the minutes to the stenographer until after January 1, 1913. This would appear to be a deliberate attempt to deceive the court. There is not a particle of excuse for the failure of defendant to file the case within the time allowed by the trial court. There is not a particle of excuse for the failure of defendant to prepare and serve case and papers on appeal within the time allowed by this court. The defendant's attorney, having failed to comply with the rules requiring him to print and serve case and papers on appeal, to excuse such default, has made an affidavit which is misleading and could only be intended to deceive. Such practice cannot be too strongly condemned, and it must result in a denial of this motion.

Motion to extend time is therefore denied, with $10 costs, and the appeal stands dismissed.

---

(79 Misc. Rep. 185.)

· In re RAAB'S WILL.

(Surrogate's Court, New York County.   January 22, 1913.)

1. WILLS (§ 81*)—PARTIAL INVALIDITY.
> A will may be entitled to probate, notwithstanding the invalidity of some of its provisions.
> [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. § 81.*]

2. WILLS (§ 446*)—CONSTRUCTION—UNNATURAL CONSTRUCTION.
> The language of a will cannot be wrested from its natural import in order to preserve its validity.
> [Ed. Note.—For other cases, see Wills, Cent. Dig. § 962; Dec. Dig. § 446.*]

3. WILLS (§ 489*)—CONSTRUCTION—EXTRINSIC EVIDENCE.
> While extrinsic evidence is not admissible where testator's intent is clear on the face of the will, it may be admissible to show who were the objects of testator's bounty.
> [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1037–1046; Dec. Dig. § 489.*]

4. WILLS (§ 82*)—VALIDITY.
> · If testator was of disposing mind, he could give all of his estate to his grandchildren without providing for his son.
> [Ed. Note.—For other cases, see Wills, Cent. Dig. § 203; Dec. Dig. § 82.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. PERPETUITIES (§ 6*)—TIME OF VESTING.**

The fifth paragraph devised the remainder of the estate in trust to collect the rents, issues, and profits during the minority of testator's grandchildren, and provided that the surplus after payment of taxes, etc., should accumulate during such minority, and,. "upon the arrival of the age of twenty-one years of any of my grandchildren, I direct my said trustee to pay to such grandchildren his or her proportionate share of my estate and the proportionate share of all accumulations," dividing the estate into as many shares as there may be grandchildren or the representatives of any grandchildren "living at the time the oldest living grandchild arrives at" majority, and further provided that the share of any grandchild dying "before arriving at said age leaving lawful issue" shall be paid to such issue equally, and, if it die without issue, then to the surviving grandchildren, or the issue of any deceased grandchildren, and the sixth paragraph directed the payment of the estate and all accumulations to certain corporations upon the death of all grandchildren during minority without issue. *Held*, that the gift to each grandchild could not be considered as severed instantly from the general estate and payable to him at any event at majority, and the income during minority.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. § 6.*]

**6. PERPETUITIES (§ 6*)—SUSPENSION OF ALIENATION.**

The trust was to continue until the eldest surviving grandchild became 21 years of age, and the estate was not to be divided when the eldest grandchild living at testator's death became of age, and, in view of the fact that there were four grandchildren living at testator's death, aged, respectively, eight, seven, four, and two years, the trust was invalid as suspending. the power of alienation of realty for more than two lives in being and a possible minority, contrary to Real Property Law (Consol. Laws 1909, c. 50) § 42, and suspending the absolute ownership of personalty for more than two lives in being when the estate was created, contrary to Personal Property Law (Consol. Laws 1909, c. 41) § 11.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. § 6.*]

**7. WILLS (§ 447*)—CONSTRUCTION—FAVORING VALIDITY.**

The surrogate must adopt a valid construction of a will if it be equally susceptible of a valid and an invalid interpretation, but the surrogate cannot uphold a disposition clearly contravening a statute.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 963; Dec. Dig. § 447.*]

**8. WILLS (§ 630*)—FUTURE DEVISE—CONTINGENT ESTATE.**

Where the words of gift in a testamentary trust directed division of the trust estate or payment of the share at a future time dependent upon the beneficiary's arrival at majority, the gift is future and contingent, and not vested.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. § 630.*]

**9. WILLS (§ 523*)—BEQUESTS TO CLASS.**

Where, under a testamentary trust, no division of the property was to be made until a grandchild attained majority, when it was to be divided equally between the then living grandchildren and the issue of a deceased grandchild, the bequest was to a class, so that subsequently born grandchildren would be entitled to a share if living when the estate was divided.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1115; Dec. Dig. § 523.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. PERPETUITIES (§ 9*)—UNLAWFUL ACCUMULATIONS.

In view of Real Property Law (Consol. Laws 1909, c. 50) § 61, providing that an accumulation of profits of realty directed to commence upon the creation of the estate must be made for the benefit of minors then in being, and of Personal Property Law (Consol. Laws 1909, c. 41) § 16, making an accumulation of the income of personalty valid if directed to be made for the benefit of minors in being at testator's death, a direction in a testamentary trust for the accumulation of an income from realty and personalty for the benefit of minors some of whom were not in being at the time the accumulation commenced was void.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 67–73; Dec. Dig. § 9.*]

11. WILLS (§ 81*)—INVALIDITY IN PART.

The invalidity of a provision in a testamentary trust for the accumulation of an income during the minority of beneficiaries and until the division of the estate would not invalidate the rest of the trust.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. § 81.*]

12. PERPETUITIES (§ 9*) — ACCUMULATIONS OF PROFITS — BENEFICIARIES — ADULTS.

Rents and profits cannot be accumulated under a testamentary trust for the benefit of adults.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 67–73; Dec. Dig. § 9.*]

13. PERPETUITIES (§ 4*)—CONTINGENT ESTATE.

A remainder which because of an uncertain event cannot vest in possession until the termination of more than four lives in being at the creation of the first estate is invalid.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. § 4.*]

14. WILLS (§ 852*)—ESTATE DEVISED—CONTINGENT REMAINDERS—VALIDITY.

A contingent remainder limited upon an invalid trust term is invalid.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2167, 2168; Dec. Dig. § 852.*]

In the matter of the will of Charles Raab, deceased. Decree of Surrogate's Court adjudging certain clauses invalid.

The parties in a proceeding for the probate of the last will (and a codicil thereto) of Charles Raab, deceased, expressly put in issue the validity, construction, and effect of the following portions of the said will (executed within this state by a resident thereof), viz.:

"Fifth. All the rest, residue and remainder of all my estate, both real and personal, I give, devise and bequeath to my executor and trustee hereinafter named, in trust, however, to collect the rents, issues and profits thereof during the minority of my grandchildren, hereinafter provided for; to apply the same towards the payment of all taxes, assessments and towards the repair, maintenance and improvement of said property; and the surplus thereof to accumulate the same during the minority in bonds and mortgages and other securities as may be permitted by law.

"Upon the arrival of the age of twenty-one years of any of my grandchildren, to wit, the children of my son George Thomas Raab, I direct my said trustee to pay and distribute to such grandchild his or her proportionate share of my estate and the proportionate share of all accumulations thereof, dividing my estate into as many shares as there may be children of my said son George Thomas or the representatives of any child or children of my said son living at the time the oldest living grandchild arrives at said age of twenty-one years.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"In the event of the death of any child of my son said George Thomas who shall die before arriving at said age leaving lawful issue, the share of the one so dying shall be paid to and is hereby devised and bequeathed to such issue equally. Should any child of my said son die before arriving at said age of twenty-one years without leaving lawful issue, I then give and bequeath his or her share to the surviving sisters and brothers or the issue of any deceased brother or sister per stirpes.

"Sixth. In the event of the death of all of my said grandchildren during minority without leaving lawful issue, I give and bequeath and I direct the payment of my estate and all accumulations thereof to the Presbyterian Hospital, St. Lukes Hospital, the Post Graduate Hospital, all of the Borough of Manhattan, and to the Wartburg Home for Aged and Infirm of the Borough of Brooklyn, in equal proportions."

Charles Raab, the testator, died in New York county on the 6th day of June, 1912. At the time of his death he was a resident of New York county. His will was made and executed in New York county on the 14th day of March, 1906, and the codicil thereto was made and executed in New York county on the 21st day of December, 1908. At the time of his death he possessed both real and personal property in this state. George Thomas Raab, the contestant herein, was his only heir and next of kin.

George Thomas Raab, the only son of the testator, had two children living at the time of the execution of the will, aged two years and one year, respectively. At the time of the execution of the codicil he had three children living. At the time of the testator's death the said George Thomas Raab had four children living, aged eight, seven, four, and two years, respectively.

Krauthoff, Harmon & Matthewson, of New York City (Edward J. Petterson, of counsel), for the will and codicil and for the United States Mortgage & Trust Co.

Forster, Hotaling & Klenke, of New York City, for contestant George Thomas Raab.

Taylor, Jackson & Brophy, of New York City, for New York Post-Graduate Hospital and Medical School.

John C. Stemmermann, of Brooklyn, for Wartburg Home for Aged and Infirm.

Jeremiah A. O'Leary, of New York City, special guardian.

FOWLER, S. [1] The last will of Charles Raab, being entitled to probate, irrespective of the alleged invalidity of some of its provisions (Matter of Davis, 182 N. Y. 468, 75 N. E. 530; Matter of Trumble, 199 N. Y. 454, 92 N. E. 1073), is now here for construction, pursuant to section 2624, Code of Civil Procedure. Prior to the amendment of section 2624, in the year 1910 (chapter 584, Laws of 1910), the surrogate was without jurisdiction to construe devises or other provisions relating to real property contained in a will (Matter of Trotter, 182 N. Y. 465, 75 N. E. 305). Since that amendment it would appear to be otherwise, and the surrogate has such jurisdiction. Bellinger v. Taylor, 144 App. Div. 851, 129 N. Y. Supp. 435; Matter of Randall, 77 Misc. Rep. 41, 137 N. Y. Supp. 319. Unless the amendment of 1910 had such effect, its scope and purpose is not apparent. As the surrogate's jurisdiction is not questioned in this proceeding, it will be taken for granted for the purposes of the present cause, although some points of the general legislation of 1910, touching the surrogate's jurisdiction over devises, may be, perhaps, open to serious contention ultimately in the higher courts of the state. Those points

are not, however, involved here, and consequently need not be noticed at large by the surrogate.

Where the meaning of a will is apparent from its language, the plain import of the language cannot be departed from, even though that import result in rendering the will invalid. Van Nostrand v. Moore, 52 N. Y. 12.

[2] Courts of construction are not permitted to wrest the language of a will from its natural import in order to save it from deserved condemnation. Cottman v. Grace, 112 N. Y. 299, 19 N. E. 839, 3 L. R. A. 145. The first duty of a court of construction is to interpret the testamentary disposition which the testator intended to make, and, when that is done, the validity or invalidity of the disposition must be adjudged regardless of consequences. The court cannot, where there is no ambiguity or doubt, make a new will for the purpose of applying the maxim, "Ut res magis valeat suam pereat." Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989. It is only where there is uncertainty, doubt, or equivocation on the face of a will that that established maxim of construction is to be applied.

[3] Where the intention of testator is clear on the face of the will itself no resort to extrinsic circumstances is permissible. It is not accurate to say in such a case that the court may always consider circumstances surrounding the testator when he made his will or at the time of his death in order to arrive at his intention. Higgins v. Dawson, A. C. 1; Smith v. Smith, 1 Edw. Ch. 189. Extrinsic evidence is never permissible where the intent of the testator may be gathered from the language of the will itself. To my mind this is such a case. But it is permissible to resort to extrinsic circumstances in order to show who in fact were the objects of the testator's bounty. There is an important distinction between evidence of testator's intention deduced from circumstances surrounding testator and the evidence of testator's bounty deduced from facts surrounding the objects of such bounty. The latter kind of evidence is, I may say, generally admissible in causes of this character.

The will in this case makes no provision for the testator's only son. It passes over him to the son's children. The grandchildren, on the face of the will, were to be the main objects of the testator's bounty.

[4] The testator, being capax, was quite within his rights in making such a disposition of his estate. Jackson v. Betts, 9 Cow. 208, reversed on another point, 6 Wend. 173; Horn v. Pullman, 72 N. Y. 269, 276. In order to carry out the scheme of his will testator bequeathed and devised his estate to a trustee for the benefit of his grandchildren. The trust scheme is asserted to be counter to the statute now directed against perpetuities, and this is the first question in this cause. It may be observed that the statute against perpetuities is of increasing importance at this day, when the wisdom of tolerating express trusts is being more and more challenged in many states and countries. Certainly the correct application of a statute founded on public policy is most important in any case.

[5] It does not seem possible to bring this will within the ruling of such decisions as Warner v. Durant, 76 N. Y. 133, and Matter of Lin-

coln Trust Co., 76 Misc. Rep. 421, 137 N. Y. Supp. 162, and treat the gift to each grandchild as severed instantly from the general estate, and to be paid to him in any event at majority, meanwhile giving him the income from the fund. This is just what the late Mr. Raab does not do. On the contrary, he provides that the trust property shall be kept by the trustee intact until the happening of an event specified.

[6] Is the trust term prescribed too long? The will directs the trustee to collect the rents, issues, and profits of the residuary estate during the minority of testator's grandchildren, who at his death were four in number, ages eight, seven, four, and two years, respectively. It will be observed that there is no direction to pay any portion of such rents, issues, and profits to the grandchildren during their minority, but the same are to be accumulated and invested by the trustee. Upon the arrival at the age of 21 years of any of said grandchildren, the trustee was directed to pay and distribute to such grandchild his or her proportionate share of the residuary and its accumulations. Then follows a provision of the will providing for the death of any grandchild before attaining the age of 21 years. These clauses must be read together. The real question then raised by the peculiar language of Mr. Raab's will is this: Does the trust term which he prescribes necessarily involve four actual minorities?

On the face of the will there is no direction for division or distribution of the property before the arrival at the age of 21 of "the oldest living grandchild." Nor is there any direction to limit the division to the number of grandchildren who were living at the death of the testator, and who would be living at the time of the division, or would have died before that time leaving issue. On the contrary, there is an express direction to divide the property into as many shares as there may be children or representatives of children of his son George Thomas Raab living at the time of division. At what time or upon the occurrence of what event did the testator intend that such division should be made? Was it when the eldest grandchild living at the time of his death should arrive at the age of 21 or died before reaching that age, or was it when the eldest grandchild who survived should reach the age of 21? If it be assumed in arguendo that testator intended the division of the trust estate to be made when the eldest grandchild living at the time of his death reached the age of 21 or died before that time, this will be contradictory of the direction contained in the first part of the paragraph to distribute and pay "upon the arrival at the age of twenty-one years of any of my grandchildren." If, however, the testator is taken to mean by the words "at the time the oldest living grandchild arrives at the age of twenty-one years," the eldest of his grandchildren who survived until he reached the age of 21 years, the different phrases of the paragraph harmonize and express a definite conception, namely, that the trust was to continue until the eldest grandchild who survived until he was 21 should reach that age. "The arrival of the age of twenty-one years of any of my grandchildren" necessarily means the first of his grandchildren who arrived at that age, or the eldest living grandson who survived to that age, and is entirely inconsistent with an interpretation which would ascribe to the testator an intention that the division should be made when the

eldest grandson living at the time of his death arrived at the age of 21 or died before reaching that age. It would therefore appear that it was the intention of the testator to create a trust; that the trustee was to accumulate the rents and profits of the trust fund until the eldest living grandchild who survived until he was 21 reached that age, when the corpus of the trust was to be divided into as many shares as there were living grandchildren or issue of deceased grandchildren; that the share of the one who had reached 21 was to be paid to him at that time, and the share of any one who had died leaving issue was to be paid to such issue; that the remainder of the trust property was to be held by the trustee and the rents and profits accumulated until the next grandchild reached 21 or died before that time leaving issue, when the share of such grandchild would be paid to him or his issue, and that such accumulations and payments were to continue until all the grandchildren living at the time of the division reached 21 or died before reaching that age, and, if all the grandchildren died before reaching 21 without leaving issue, the corpus of the trust fund, with the accumulations, was to be paid to the corporations mentioned in the sixth clause of the will. Such, I think, is the apparent intent of the testator in regard to the duration of the trust term. No other interpretation seems possible under settled canons of interpretation.

According to my interpretation of this will, already indicated, the provisions of the fifth and sixth clauses of the will must be adjudged invalid. Those clauses create a trust which suspends the power of alienation of real property for more than two lives in being and a possible minority, and which suspends the absolute ownership of personal property for more than two lives in being at the time of the creation of the estate. Section 42, Real Property Law (Consol. Laws 1909, c. 50); section 11, Personal Property Law (Consol. Laws 1909, c. 41); Jennings v. Jennings, 7 N. Y. 547; Schettler v. Smith, 41 N. Y. 328; Benedict v. Webb, 98 N. Y. 460; Greenland v. Waddell, 116 N. Y. 234, 22 N. E. 367, 15 Am. St. Rep. 400; Schlereth v. Schlereth, 173 N. Y. 444, 66 N. E. 130, 93 Am. St. Rep. 616; Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989; Leach v. Godwin, 198 N. Y. 35, 91 N. E. 288. The directions for accumulations are by the adjudications of this state also invalid (section 61, Real Property Law; section 16, Personal Property Law), as I shall hereafter show.

[7] If, however, the provisions of this will were ambiguous and equally susceptible of some other interpretation which makes the limitation in trust valid, it would be the surrogate's duty to adopt such interpretation. Jacoby v. Jacoby, 188 N. Y. 124, 80 N. E. 676. But in arriving at such an interpretation the court cannot make a new will for the testator nor sanction a plain attempt on the part of a testator to make a testamentary disposition of property in a manner prohibited by statute. Let us, then, consider in detail the contentions of counsel that no perpetuity exists in this will.

[8] It is contended by the learned counsel for the proponent that at the death of the testator each of the grandchildren then living took a vested interest in one-fourth of the corpus of the trust. As the only words of gift used by the testator were a direction to divide or pay at

a future time, the gift is not vested, but future and contingent. Salter v. Drowne, 205 N. Y. 204, 98 N. E. 401; Matter of Crane, 164 N. Y. 71, 58 N. E. 47; McGillis v. McGillis, 154 N. Y. 532, 49 N. E. 145. It is also contended that the testator intended to limit the beneficiaries of the trust fund to the grandchildren who were living at the time of his death.

[9] The testator having created a trust and directed that it should be held in solido, no division or distribution to be made until a grandchild arrived at the age of 21, when the trust fund was to be divided into as many shares as there were grandchildren then living, the issue of any deceased grandchild to take its parent's share, the bequest was to a class, and the children born to George Thomas Raab after the testator's death would be entitled to share in the estate if they were living when the time for division arrived. Matter of King, 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Ann. Cas. 412; Matter of Baer, 147 N. Y. 348, 41 N. E. 702; Matter of Crane, 164 N. Y. 71, 58 N. E. 47.

The special guardian for the infants contends that the trust was only for the benefit of those grandchildren who survived the testator; that the latter intended that the trust should continue during the minority of the eldest grandchild living at his death, and that it should terminate upon the arrival of such grandchild at the age of 21 years, or by his death before reaching that age; and that at the time when the first of these events occurred the trust estate was to be divided into as many shares as there were grandchildren then living who survived the testator and the issue of any such deceased grandchildren. The objection to this contention is that it requires for its support two assumptions not warranted either by authority or by the language of the testator: First, that the testator intended the division to take place when the eldest grandchild living at his death reached 21, or died before reaching that age; and, second, that the testator intended to limit his bounty to such of his grandchildren as were living at the time of his death. Remembering that at the time the testator made his will his son, George Thomas Raab, had only two children, and that at the time of testator's death his son had four children, the youngest of whom was only two years of age, it would seem an entirely unjustifiable assumption that the testator intended to exclude from participation in his estate those grandchildren who might be born after his death, while evidencing such a keen desire to provide for the maintenance of those who were living at the time of his decease. According to the special guardian's interpretation, if the eldest grandchild living at the time of testator's death died one day thereafter, the corpus of the trust fund would vest in the grandchildren then living to the exclusion of any after-born grandchildren. But the words of the testator directing the trust to continue "during the minority of my grandchildren," directing payment "upon the arrival of the age of twenty-one years of any of my grandchildren," and directing a division of the trust estate "into as many shares as may be children of my son George living when the oldest living grandchild arrives at the age of twenty-one," are so clear and comprehensive and so evidently meant to apply to any children of his son George who would be living at the time

when the eldest grandchild arrives at the age of twenty-one, that their signification cannot be limited by any mere assumption which would impute to the testator an intention to exclude from the participation in his estate those grandchildren who might be born after his death. The plain language of the testator negatives the first assumption. The cases above cited show that authority is against the second.

If we assume, for the sake of argument, that the testator intended that the division of the property held in trust should be made when the eldest grandchild living at the time of his death reached his majority, or died before that time, we get the following result: If such grandchild died before arriving at the age of 21 without leaving issue, and if the other grandchildren who survived the testator were then living, the trustee could divide the trust fund into four shares, and pay the one-fourth of the one who had died to the survivors as their absolute property. If the second eldest died before his majority without leaving issue, his share of the trust property would be paid to the survivors. Upon the death of the third grandchild before arriving at the age of 21 without leaving issue, his share would be paid by the trustee to the surviving grandchild; and, if the latter died before 21, without issue, his share—i. e., the remaining one-fourth of the trust estate—would be paid by the trustee to the corporations mentioned in the sixth clause of the will. The four grandchildren would then have died during minority without leaving issue, which is the contingency mentioned by the testator in the sixth clause of his will upon which the corporations therein mentioned became entitled to "my estate and all accumulations thereof." But according to this interpretation, not his estate, but only one-fourth of his estate, would then be available for payment to the corporations. Therefore it appears conclusively that the interpretation contended for by the special guardian and the counsel for the proponents does not accord with the manifest intention of the testator.

The learned counsel for the proponents, as well as the special guardian for the infants, cite Matter of Lally, 136 App. Div. 781, 121 N. Y. Supp. 467, in support of their position. But the Matter of Lally is readily distinguishable from the matter under consideration. In that case the testator gave his property to trustees, with directions to hold and manage it for the support and education of his children during their minority and when the youngest of such children had arrived at the age of 21 to divide and distribute the property and accumulated income between such children share and share alike. There was no gift over or substituted remainder. The court held that it was the intention of the testator that the trust should terminate upon the majority of his youngest daughter who survived him, or upon her death before reaching her majority, and that, upon her reaching the age of 21 or dying before that time, the trust terminated, and the duty of the trustees was to divide and distribute. In the matter now before me, even under their interpretation of the will, the trust does not terminate upon the arrival of the eldest living grandchild at the age of 21 years or his death before that time. It continues as to part of the trust property until the youngest living grandchild who reaches the age of 21 has arrived at that age. Therefore the trust is not, as

in the Matter of Lally, to terminate when a certain child shall reach its majority or die before that time. Besides, in the matter now here the will provides for gifts over and substituted remainders, and a final contingent remainder to corporations in the event that all the grandchildren die before the age of 21 without leaving issue. So that, as the court said in Whitefield v. Crissman, 123 App. Div. 233, 108 N. Y. Supp. 110:

"There is no method by which the trustees could distribute the property bequeathed until the termination of the minority of the four children, nor could there be an alienation of the real 'property and distribution of its proceeds during the like period."

It is true that, under the interpretation contended for by the proponents, there could be a distribution of a part of the trust property, but there could not be a distribution of all the property until the youngest surviving grandchild reached his majority or died before that time.

The proponents rely also upon the case of Seitz v. Faversham, 205 N. Y. 197, 98 N. E. 385. In that case the testatrix gave her real and personal property to the issue of her daughter, the rents and profits to be paid to them until they arrived at the age of 21. At the time of testatrix's death her daughter had two children. The court held that a future contingent estate vested in the two infants upon the death of the testatrix, subject to divestment as to either one who should die before he became of age. In the event of such divestment, the estate vested absolutely in the survivor, so that the trust was measured by two lives. In the matter under consideration there were four grandchildren living at the death of the testator, so that the period of suspension of alienation may not be measured by two lives as in the Seitz v. Faversham Case, but by four lives. The surrogate has now considered all the contentions and arguments of counsel in support of the will, and for the reasons stated he must adhere to the conclusion already reached to the contrary.

[10] The direction for accumulation is void, because upon any interpretation of the provisions of the will these accumulations would inure to the benefit of minors not in being at the time the accumulation commenced, namely, at the death of the testator. Thus, if testator intended that the grandchildren born after his death should participate in his estate, the direction for accumulation would be invalid. If he intended to limit the beneficiaries to those living at the time of his death and who arrived at the age of 21, or died before the time of division leaving issue, as such issue would be entitled to their parents' share of the accumulation, and as they were not in being when the accumulation commenced, the direction for such accumulation would be invalid. Section 61, Real Property Law; section 16, Personal Property Law; U. S. Trust Co. v. Soher, 178 N. Y. 442, 70 N. E. 970.

[11] But the invalidity of the direction for accumulation would not of itself render the trust invalid. Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971. In view of the disposition which I intend to make of this matter, it is not necessary to decide who would be entitled to the accumulation if the trust were valid.

In Jennings v. Jennings, 7 N. Y. 547, the testator directed that his

executor should pay to his wife from the income of his estate sufficient for her support and the support and maintenance of his children, and that they should accumulate the remainder of the income until the oldest surviving child reached the age of 21, when such child's portion was to be paid to him, and that the same course should be pursued with respect to his other children. The testator was survived by four children. The court held that the trust was void as suspending the power of alienation for more than two lives in being. In Benedict v. Webb, 98 N. Y. 460, the period of division was designated by the testator as follows:

"When all my said children or the youngest survivor of them shall have attained the age of twenty-one years."

The court held that it was the intention of the testator to suspend the division until all his minor children living at his death should attain their majority. There were two minor children living at his death. The trust was continued in part for the benefit of two daughters during their lives. The court held that the trust was bad as to that part which was continued after the period of minority of the two minors. In Greenland v. Waddell, 116 N. Y. 234, 22 N. E. 367, 15 Am. St. Rep. 400, the testator provided that one-third of his property should be held in trust, the income to be paid to his sister during her life, and upon her death the income to be paid to her children "until the youngest child shall arrive at the age of twenty-one, and on said youngest child arriving at the age of twenty-one, my said executors shall pay and transfer to the child or children that shall then be living the whole of said one-third with its accumulations, and on the death of all of said children before arriving at said age my executors shall pay the one-third to my brother and sister." The court said:

"If the children do not reach the age of 21, the fact that the direction is that the fund shall go to a brother and sister of testator is not consistent with the vesting of the absolute ownership in the children on the death of their mother. It is therefore clear that the direction in the will will operate to suspend the absolute ownership of the fund."

In Bindrim v. Ullrich, 64 App. Div. 444, 72 N. Y. Supp. 239, testator gave his property to trustees, with directions to pay the income to his widow for life. At the death of the widow to "pay the income from one share to Eva B. during the minority of my grandchildren, the children of my son Julius, to be used for the support and education of said grandchildren, and when they attain the age of twenty-one years to divide such share among said grandchildren equally, share and share alike." Held invalid as suspending the absolute ownership of property for the life of the widow and five grandchildren. Also because there was a possibility of a grandchild being born after the creation of the estate, and the power of alienation according to the terms of the will would be suspended until all the members of the class arrived at the age of 21. In Whitefield v. Crissman, 123 App. Div. 233, 108 N. Y. Supp. 110, the testator gave property to trustees for the benefit of his four children, "the income and so much of the principal as may be necessary for their maintenance to be used until all have reached their

majority, when the residue is to be divided share and share alike among them, and in the event of the death of any of them without issue said share to be divided pro rata among those remaining." Held that the trust violated the statute. In Schlereth v. Schlereth, 173 N. Y. 444, 66 N. E. 130, 93 Am. St. Rep. 616, the testator left real and personal property with a power of sale. He directed that the income should be paid to his sister during her life, after her death to pay over such income to her issue in equal shares until the youngest of such issue attain the age of 21, and then to divide and distribute the whole of the trust fund so held among such issue in equal shares. The court said:

"It is obvious from the provision to pay over the principal when the issue reached the age of 21, paying to them the income in the meantime, that the testator intended to make a future and not a present gift. It is also obvious that the income and corpus of the estate was intended by the testator to be divided among the persons answering the description contained in the seventh clause of the will at the time when such division was to be made. Thus the time during which the absolute ownership was to be suspended was not measured by two lives in being at the death of the testator."

The trust was held invalid. These cases cited are analogous in principle to the matter under consideration. It therefore follows that the trust attempted to be created by the fifth clause of the testator's will is invalid.

The sixth clause provides that, in the event of the death of all the children of George T. Raab before arriving at the age of 21 without leaving issue, the whole estate with the accumulated rents and profits shall be paid to the corporations therein mentioned.

[12] As to the accumulated rents and profits the bequest is void, because profits cannot be accumulated for the benefit of adults. Before the trustee could pay the trust estate or any part of it to those corporations, it would be necessary for him to hold the property in trust during at least four lives, because it is only upon the death of the last survivor of the grandchildren without leaving issue that the corporation would be entitled to take.

[13] A remainder contingent because of an uncertain event, which cannot vest in possession until after the termination of more than four lives in being at the time of the creation of the estate upon which it is limited, is invalid.

[14] Besides, a contingent remainder limited upon an invalid trust term is invalid. Knox v. Jones, 47 N. Y. 389; Bindrim v. Ullrich, 64 App. Div. 449, 72 N. Y. Supp. 239; Greenland v. Waddell, 116 N. Y. 234, 22 N. E. 367, 15 Am. St. Rep. 400.

As the fifth and sixth clauses of the will are invalid, the testator died intestate as to the property which he attempted to dispose of by those clauses, and such property passes to his heirs at law and next of kin. Let the decree be settled accordingly.