NEW YORK COUNTY. — HON. D. C. CALVIN, SURROGATE. — October, 1878.

TRUSTEES OF HARVARD COLLEGE *v.* QUINN.

*In the matter of the estate of* THOMAS CONNELL, *deceased.*

Where a will provided for the conversion of the bulk of the estate into money and the payment of the various legacies therewith, most of which were not to be paid before the expiration of two years after the probate of the will, but some were excepted from this restriction, and the latter were paid in full, the executors having reason to believe that the estate would be sufficient to pay all in full, which proved not to be the case, owing to subsequent depreciation in its value,— *Held* that the preference of the legacies last mentioned extended only to the time of payment, and that they were to abate *pro rata* with the other legacies.

*Held* also, that while the executors were bound to enforce the liability of

the overpaid legatees to refund the amount of the overpayment, the former, having acted in good faith, and the deficiency arising from such depreciation should not be chargeable with the result of such proceeding, but the expense thereof should be sustained by the estate.

Whenever a will provides for the payment of one legacy before another, and it is not made preferential, if payment be demanded after the expiration of a year from the issuing of letters testamentary, the executor should refuse to pay in full, and leave the legatee to his application to the Surrogate to compel payment, whereon, if a deficiency in the assets appear probable, a partial payment may be ordered, or a bond for repayment required.

UPON a final accounting by the executors, objections were filed on behalf of Harvard College to the account as rendered by John Quinn, one of the executors, in that it appeared therefrom that a legacy to the Sister Gertrude Paul, had been paid in full, while the will gave her no preference over the legacy to the objector, and that a legacy to the Holy Cross had been paid in full, while it was not entitled to a preference over that of the objector.

The New York Catholic Protectory for boys, and the New York Catholic Protectory for girls, legatees, filed objections to the same executor's account in that it was erroneous in crediting the executor with the payment of $10,000 to Sister Gertrude, and $4,000 to Sister Mary Alp, of the Convent of the Holy Cross, and the question whether the executor named was entitled to pay those legacies in full, was the one submitted, the account showing unpaid legacies to the amount of $40,000, and a balance in the hands of the executors of little over $6,000. It was conceded that when such payments were made, the executor had good reason to believe that all the legacies would be paid, the deficiency arising subsequent thereto, from the depreciation of property.

The will of the testator in the 3d clause recited that as his personal estate was insufficient to pay the legacies thereinafter given, he devise to his executors his real estate in trust to sell and dispose of the same, and apply the proceeds, with the avails of his personalty not specifically devised, to the payment of debts and legacies contained in his will, and until such sale directed them to collect the rents and profits of· the real estate, and pay taxes and assessments, and if such rents should be insufficient therefor, such deficiency to be paid out of the avails of his personal estate.

By the 4th clause he directed his executors out of the proceeds of the real and personal estate to set aside $35,000, and invest the same, and pay the interest and income semi-annually to his adopted daughter, Gracy Lane Connell, for life, and on her death leaving issue, to pay the principal to such of her children, or their descendants, and in such proportion, as she should by will direct, and in default of such direction, the principal was bequeathed equally to his lawful issue, and their descendants, but if she should die without issue or their descendants, his executors, on the death of his daughter, he then directs to pay of the principal to the Roman Catholic Orphan Asylum for boys in the City of New York, in the charge of the Sisters of Charity, $10,000; the Roman Catholic Asylum for girls, $5,000; the Roman Catholic Industrial School, 82nd street, New York, in charge of the Sisters of Mercy, $5,000; the Roman Catholic Church of Saint Vincent Ferrier in Lexington avenue, $5,000; the Roman Catholic Church of St. Francis Xavier, 16th street, $5,000; and to the Roman Catholic Mission,

Hoboken, New Jersey, $5,000.  By the 5th clause he gave various sums which he directed his executors to pay as soon as could conveniently be done in the settlement of his estate, and in the same order as therein named to numerous legatees, and at the close of the clause he directed his executors to pay the whole or some part of the bequest to Gracy Lane Connell, Ann Hasey, Mary Bell, and Thomas Lane, legatees thereinbefore named, out of his personal estate, so far as the same shall permit, before the payment of the other legatees named, and without waiting for the conversion of the realty.

By the 6th clause he directed that after satisfying the foregoing provisions of his will, his executors pay out of the residue of the proceeds of his estate, $10,000 to the Roman Catholic Protectory for boys, under charge of the Christian Brothers in Westchester County; $10,000 to said Protectory for girls; $10,000 to the Foundling Asylum under the charge of the Sisters of Mercy in New York; $5,000 to the Roman Catholic Church of Saint Vincent Ferrier of Lexington avenue; $5,000 to the Reverend Sister Gertrude, Franciscan Sister, of Peekskill; $5,000 to the Convent of the Holy Cross, St. Laurent near Montreal; and $2,000 to the Rev. Father Callahan, Pastor of St. John The Evangelist, for his individual use, and benefit.  By the 9th clause he authorized his executors in their discretion to · apply in payment of such legacies in the 5th and 6th clauses of his will, any bonds and mortgages taken by them pursuant to the 3rd clause of his will, and he expressly declared, and provided that no legacies thereinbefore given, except

those to said Gracy, Ann Hasey, Mary Bell, and Thomas Lane should be due, or payable under two years after the date of the will, he desiring to afford his executors a sufficient period to realize from his real estate, without sacrifice, the necessary means for payment of said legacies; and by the 9th clause he gave the residue of his estate, one-half to his brothers, James and William equally, and one-quarter to his adopted daughter Gracy; the remaining one-quarter to his executors in trust to invest, and pay the interst and income semi-annually during her life to Gracy, and on her death to pay the principal thereof to her descendants, as she should by will appoint, and in default of such descendants then to such other persons as she should appoint, and in default of such appointment to her heirs-at-law.

Subsequently thereto the testator executed a codicil to the will which recited that since the execution of his will he had made partial provisions for his adopted daughter Gracy, and for Ann Hasey and Thomas Lane, by way of advancement; and he directed that the sum of $35,000 set apart for Gracy by the 4th clause, be reduced to $15,000, to be invested, and to be applied in the same manner as in the 4th clause provided, and that in the contingency mentioned in that article, the Charitable Institutions, and churches therein mentioned, should take the said $15,000 *pro rata*, in the same proportion as the said $35,000 was directed to be distributed.

By the 2nd clause of said codicil he provided that the 5th article of his will should be changed in the following particulars: the legacies to Ann Hasey to be

$2,000 instead of $10,000, being in addition to the advancement therein referred to; that the legacy to Thomas Lane should be $1,000 instead of $5,000, being in addition to the advancement referred to, and he directed his executors to invest in trust for Thomas Lane $10,000 instead of $5,000, to collect the interest and pay it to him semi-annually during life, and on his death the principal to his lawful issue equally. If he died without lawful issue then to such person as he should by last will and testament appoint, and in default of appointment to his lawful heirs.

He also gave and bequeathed to his executors out of the proceeds of his estate to pay John Bradburn $1,000. By the 3rd clause he made the following amendment and addition to the 6th article of his will.

1st. The sum to be paid to the Roman Catholic Protectory for boys was reduced to $5,000, and to the same Protectory for girls to $5,000 instead of $10,000 each: 2nd. To Sister Gertrude Paul, Superior of the Missionary Sisters of Peekskill, erroneously described as the Reverend Sister Gertrude, Franciscan Sister, $10,000 instead of $5,000: 3rd. To the Convent of the Holy Cross &c. $4,000 instead of $5,000: 4th. He directed the above legacies in favor of Sister Gertrude, and the Convent of the Holy Cross to be paid by his executors immediately after making provisions for the legacies above given in favor of Gracy, Ann, Thomas Lane, and Mary Bell, as soon as practicable without waiting for the lapse of two years.

By the 5th clause he gave out of his residuary estate $10,000 in equal shares of $2,000 each, to the Roman Catholic Asylum for boys; to the Roman

Catholic Asylum for girls; to the Roman Catholic Industrial School; to the Roman Catholic Church, St. Francis Xavier; to the Roman Catholic Missionary Mothers, Hoboken, New Jersey; and 6th he gave his executors to pay out of the residue of his estate to Harvard College, Cambridge, $5,000, and he provided that each and every provision of his will except as modified by his codicil be confirmed.

Subsequently the testator executed another codicil whereby he devised to his brother James, who at his request had removed from Halifax to reside in testator's house, said house and premises; and in case his brother should die before the testator then to his widow and heirs-at-law living at the time of testator's decease according to the law of inheritance.

He also provided that in case any of the legatees named in the 5th clause of his will, should die before him the legacy therein given to such legatee should not be deemed to have lapsed, but should be paid to the heirs and next of kin.

He further modified the residuary clause of his will by revoking all the interest to his brother James, and directed the rest and residue therein referred to, to be paid, one-quarter to his brother William, and the other three-quarters to his adopted daughter Gracy, in the manner stated in said 9th clause. One-half to be paid to her, and the other half to his executors in trust for the same uses.

ANDERSON and MAN, *for trustees of Harvard College and for Institution of Mercy.*

STANLEY, BROWN and CLARK, *for the executor.*

DEVELIN and MILLER, *for the N. Y. Catholic Protectories.*

J. J. MARVIN, *for St. Xavier's College.*

WETMORE and BOWNE, *for James Connell.*

THE SURROGATE.— The questions presented for determination are. *First,* whether the executor had the right to pay Sister Gertrude her $10,000 legacy, and Sister Mary Alp her $4,000 legacy in full, in preference to those legatees objecting to the account, by reason of a preference given by the terms of the will. *Second.* If not thus preferred whether the executor is chargeable with the overpayment, having paid them in full upon the presumption that there would be ample assets to pay all the legatees of that class.

It will be observed that by the 4th clause of the will $35,000 was to be set aside for the testator's adopted daughter Gracy, but by the first codicil he reduces that sum to $15,000.

By the 5th clause, which provides that the various legacies shall be paid in the order they are named, he gives to his adopted daughter Gracy $5,000, Ann Hasey $10,000, Thomas Lane $5,000, and the income of $5,000 during his life, and Mary Bell $4,000, and directs his executors to pay the whole, or some part of .their bequest out of his personal estate before the payment of the other legacies.

By his 1st codicil the legacy to Ann Hasey is reduced from $10,000 to $2,000, and the legacy to Thomas Lane is reduced from $5,000 to $1,000, and he is given the income of $10,000 instead of $5,000 as provided in the 5th article of the will.

By the 6th clause he provides that after satisfying the foregoing provisions, the executors shall pay, among others, to Sister Gertrude $5,000, and to the Convent of the Holy Cross $5,000, and that the legacies thereinbefore given except to Gracy, Ann Hasey,

Mary Bell, and Thomas Lane, shall not be due, and payable until two years after the probate of his will, in order to afford his executors a reasonable time to realize from his real estate without sacrifice.

By his 1st codicil he makes the following amendments and additions to the 6th article of his will, among others, and gives $10,000 to Sister Gertrude, instead of $5,000, and to the Convent of Holy Cross $4,000, instead of $5,000, and directs the legacies to Sister Gertrude, and the Convent of the Holy Cross to be paid by his executors immediately after making provisions for the legacies to Gracy, Ann, Thomas Lane, and Mary Bell, as soon as practicable, and without the lapse of two years, and provides that each and every provision of his will, except as modified by his codicil is validated and confirmed.

By the will, in the residuary clause, a second portion is given in addition, to his adopted daughter, but as to that no question arises as I understand it, because there is not a sufficient fund to reach it.

It will be observed that by the 7th clause of the will it is provided that none of the legacies shall be deemed due or payable, until two years after the probate of the will, except as to his adopted daughter Gracy, Ann Hasey, Mary Bell, and Thomas Lane, but that by the 1st codicil in the fourth subdivision of the 3rd clause, he directs the legacies to Sister Gertrude and to the Convent of the Holy Cross to be paid as soon after the payment of the legacies to his adopted daughter Gracy, Ann, Thomas Lane, and Mary Bell, as practicable.

I am of the opinion that these latter provisions

gave the preference to those legacies as to the time of payment over all legacies mentioned either in the will or codicil, except those given to his adopted daughter, to Ann Hasey, Thomas Lane, and Mary Bell, and that the provisions in the codicil giving preference to these two legacies, was not confined to the legacies only named in the codicil, but to all the legacies mentioned in both instruments, and that that clause is to all intents and purposes as effectual in giving such preferences as it would have been if inserted in the 7th clause of the will, and had read thus:

"I hereby expressly declare and provide that none of the legacies hereinbefore given except those to said Gracy, Ann Hasey, Mary Bell, Thomas Lane, and Gertrude and the Convent of the Holy Cross, shall be deemed due and payable until two years after the probate of this will; and I direct that after making provisions for the said legacies to Gracy, Ann, Thomas and Mary, the legacies to Sister Gertrude, and the Convent of the Holy Cross shall be paid as soon as practicable and without waiting for the lapse of two years, provided for the payment of the other legacies in the order named in this will.

I am of the opinion that but for the provisions of the codicil giving such preference, those legacies would have been required to be paid *pro rata* with the other legacies named in the 6th clause, for the reason that the provisions of the 5th clause prescribing the order of the payment of the legacies thereinafter named, referred only to such as were named in and by the 5th clause, otherwise there was no need of a 6th clause, but the legacies given in the 6th clause

might have been added to the 5th, whereby they would have been required to be paid according to the order in which they are named in said 6th clause, and in this view it does not seem to me to be material to determine, whether the modified legacies mentioned, were in effect incorporated into either the 5th or 6th clauses of the will, for the language of the preference in the codicil is broad enough to cover the legacies of the will as well as codicil.

It will be observed that the change of the legacies to Sister Gertrude, and the Convent of the Holy Cross is made as an amendment to article 6th of the will, and as I have already suggested that the provisions contained in the 5th clause of the will to pay in the same order as thereinafter named, do not apply to the legacies contained in the 6th clause, it is quite clear to my mind that the force of that clause prescribing the order of payment does not apply to those legacies as amended by the codicil, and therefore the only question upon that subject is whether the language of the codicil, "I direct the above legacies in favor of Sister Gertrude, and the Convent of the Holy Cross to be paid by my executors immediately after making provision for the legacies before given in favor of Gracy, &c., without waiting for the lapse of two years," amounts to a preference in respect to the amount to be paid, instead of the time when they are required to be paid.

Roper on Legacies, (vol. 1, p. 420), says that "when a bequest is made in the form of a general legacy, and is pure bounty, and there are no expressions in, or inference to be drawn from, the will, mani-

festing an intent to give it priority, the objects or purposes to which the legacy is to be applied will not exempt it from abatement, for a court of equity will not speculate upon what a testator might mean as to preferring a legacy, on account of the object or purpose to which it is given, when in form it is merely general." And (at page 424): "The court, therefore, (when the testator's express declarations are relied on) requires them to be clear and explicit, in order to give any individual general legacy a preference over other general bequests." And again: "If, however, the expressions be ambiguous, and do not mark with certainty the testator's intention to give a priority to a legatee, the rule of abatement is so much regarded, that the court will not permit it to be infringed by such an uncertainty."

In Blower *v.* Moret, (2 *Ves. Sr.*, 420), the testator gave to his wife a legacy of £500, with a direction to pay it immediately after his death, out of the first moneys that should be received by his executors; it was held that neither the order of payment of the legacy immediately after the testator's death, nor the direction for its satisfaction out of the first moneys which should come to the hands of the executors, would be a sufficiently clear manifestation of his intentions that he meant to give this legacy a precedence in payment to his other bequests; that the testator in directing the legacy to be paid immediately after his death, might merely intend to anticipate the legal period of payment, and not to give the legacy a priority to his other general legacies. (See also Beeston *v.* Brooth, 4 *Mad.*, 161; Johnson *v.* Child,

4 *Hare*, 87). In the former case, a legacy is given to "A.," payable one month after the testator's death; one to "B.," payable six months thereafter, and one payable to "C." twelve months thereafter. It was held that the difference in times of payment did not impart to any of the legacies such a preference as to exempt them from abating on a deficiency of assets, because the preference was confined to payment only. So *the language*, "in the first place I give the legacy to 'A.,' and afterwards a legacy to 'B.,'" was held not to give "A." the priority of "B.," or either of them priority to other general legatees, so as to exempt them from the obligation of abating with such other legatees.

The 6th clause of the will, provides that after satisfying the foregoing provisions, the testator devises and bequeaths out of the residue of his estate certain sums, which also indicates an intention to provide for the full payment of the legacies contained in the 5th clause.

Under the above authorities, the provision for the payment of the two legacies mentioned, immediately after making provisions for the four legacies referred to, and without waiting for the lapse of two years, I am of the opinion, is no stronger indication of a preference than in the case of Blower *v.* Moret above cited, which was a direction to pay his wife's legacy immediately after his death, out of the first moneys which should be received. (See also Gallego *v.* Attorney General, 3 *Leigh*, 450).

By section 54, 3 Revised Statutes, [6th ed.], 98, (2 *R. S.*, 90, § 43), it is provided that legacies shall not

be payable until after the expiration of one year from the time of granting letters, unless the same are directed by will to be sooner paid, and by the next section, (sec. 55), it is provided that if a legacy be directed to be sooner paid, the executor may require a bond with sureties, conditioned that if any debts against the deceased shall duly appear, and that there shall be no other assets to pay other legacies, or not sufficient, the legatees shall refund the legacy so paid, or a rateable proportion thereof with the other legatees, as may be necessary for payment of the said debts, and the proportional parts of such other legacies.

This statute clearly shows that the fact that the will provides for the payment of one legacy before another, is no indication of a preference over others, otherwise no security would be required for repayment in the cases named, except for debts.

The idea that the clause of the codicil directing the payment of the two legacies mentioned, and immediately after providing for the four named, is a manifest and conclusive engrafting of those two legacies upon the 5th clause, seems to me entirely untenable, for no reference whatever is made to the 5th clause, or any of its terms, except the naming of three of the legatees thereof, and it would be as reasonable to say that it was an engrafting of those legacies into the 4th clause, which makes provision for the first named four legatees, and the adopted daughter. Indeed, such a construction is, in my opinion, without warrant in the language of the will, or any of its provisions.

The question to be determined is, what effect the

payment of the full legacies to Sister Gertrude and the Convent of the Holy Cross, when the assets proved insufficient to pay all of the same class, shall be upon the executor; whether he, having paid in the belief that there was sufficient property to pay all the legacies in full, and the deficiency arising from the depreciation of the property, he shall be charged with such over payment.

It is not quite clear that under the statute last cited, the executor might not have exacted the bond therein prescribed — certainly as to the first payment to Sister Gertrude, which was paid within one year after the issuing of letters testamentary.

This case is so submitted that it is difficult to tell whether there was apparently, and so believed to be, sufficient property to pay all the legatees, and if there was, how the deficiency occurred; but from the argument of the respective counsel, I am led to suppose that there was ample property to pay all the legatees in full at the time of the decease of the testator, and probably at the time of the payment of the legacies in question, which I have held had no preference.

In Gallego *v.* The Attorney General, (*above*), it was held that the unpaid legatees have the right to look to the executors for their rateable proportion of the fund, and are not bound to have recourse to the legatees who have been fully paid, to compel them to refund the excess by them received above their just proportion, nor have the unpaid legatees, the executors being solvent, any right to call upon the other legatees to refund; and it was stated as a query whether the executors had a right to require the legatees paid in full to

refund, although it was admitted in that case that the executors in paying, had acted in good faith, but that they should have secured themselves either by paying *pari passu,* or by taking bonds to refund, or bringing the whole again under the control of the Chancellor.

In Kinsman's Executors, (*Cases of Equity Abridged,* 239), the executor was instructed by will to turn the estate into money as soon as conveniently might be. The estate consisted principally in East India stock, when it bore a good price, and several of the legatees called for payment of their legacies, and the executor supposing the estate sufficient, gave them bonds for their legacies, but kept the stock until it fell, so that the assets were insufficient. The executor brought an action against the legatees paid in full, for the abatement of their legacies in proportion to the others, considering the value of the stock at that time, and the executor was beaten and held for the value of the stock at the end of a year.

In the case of Fenwick *v.* Clarke, (6 *Law Times, N. S.,* 593), legacies were given to be paid immediately, and that to certain persons in succession, and the will directed that the moneys not immediately payable should be invested. A year after the decease of the testatrix, the executors, believing the assets sufficient to pay the legacies in full, paid the immediate legacies, and deposited some assets in a bank which was of good repute, but which afterwards stopped; and a loss was incurred so that the deferred legacies could not be paid in full. The executor filed a bill to apportion among the deferred legatees. It was held that there being no imputation on the good

34

faith of the executor, the deferred legatees must bear the loss, and that the executors were not bound to make it good, nor the satisfied legatees to recoup; but this latter case seems to be in direct conflict with that of Gallego *v.* The Attorney General, (*above*). In the case of Kinsman's Executors, (*above*), the executor retained certain stock, contrary to the provisions of the will, until it depreciated, and hence was properly charged.

In Orr *v.* Kaines (2 *Ves. Sr.*, 193), the executor was charged, or rather was defeated in an action to compel the legatees to refund, where there appeared insufficient assets to pay in full; where the executor had filed no inventory, and took no pains to protect himself.

In Coppin *v.* Coppin (2 *Peere Williams*, 291), it was held that an executor who pays beyond assets, cannot make the legatees refund, though in Gallego *v.* The Attorney General, (*above*), Tucker, J., held otherwise; but under the facts of this case, I am of the opinion that the doctrine laid down in Fenwick *v.* Clarke, (*above*), is the juster rule, for in this case, the testator directed the payments to be made as they were made, and they were made, as I understand the statement of the case, when there was in fact ample property with which to pay all the legacies in full, and the occasion of the difficulty was by unforeseen depreciation of the property, without any fault of the executor, and it would be be very unjust, under such circumstances, to make him personally responsible and leave him to the uncertain exigency of a suit against the legatees in question, to compel

them to refund, especially where there is some doubt whether he had the right to exact security of the so-called preferred legatees at the time when the payments were made.

I am of the opinion that the over-paid legatees are liable to refund so much as they have been overpaid, (Noel v. Robinson, 1 *Vernon*, 90; Gallego v. The Attorney General, 3 *Leigh*, 450); and that it is the duty of the executor, in behalf of the estate, to enforce that liability; but I am not willing, under the circumstances of the case, as they are understood, to charge him with the result of such proceedings, but only to require him to act in the premises as the representative of the estate, for the benefit of the legatees interested therein, especially as it is claimed by some of the counsel, that in such a case the other legatees could not maintain an action against those paid in full, to abate their legacies.

I am of the opinion that sufficient funds should be retained in the hands of the executors, undistributed on this accounting, to indemnify them against any costs and expenses attending this litigation, and that after its determination there should be an accounting and distribution in respect to such sum retained, and of any amount recovered and realized from the over-paid legatees.

While I am clear in the opinion that the executor acted in good faith in making these payments, from a belief that it was his duty to pay under the terms of the will, and that there was ample property to pay the legacies in full, yet I deem it proper to make the following suggestions, for the benefit of executors thus situated in the future.

Wherever a will provides for the payment of one legacy before another, and it is not made preferential, and the payment shall be demanded after the expiration of a year from the issuing of letters testamentary, the executor should refuse to pay in full, and leave the legatee to his application to the Surrogate to compel such payment, whereon if it appear at all probable that there may be a deficiency of assets to pay all the legacies, he may direct the payment of a reasonable percentage, or in case of full payment require from the legatees a bond, such as is provided by the statute, in the case where payment is directed before the expiration of a year.