(87 Misc. Rep. 503)

In re LLOYD et al.

(Surrogate's Court, New York County.   November 17, 1914.)

1. WILLS (§ 806*)—CONSTRUCTION—LEGACIES—PREFERENCES.
   Testator, after bequeathing a life estate to his sister, by the third clause of his will bequeathed to G., his favorite niece, $15,000, to be paid to her one year after testator's death, provided he should not have deeded to her a house during his lifetime, in which case the bequest should be canceled by such deed; but, if she should not survive testator, then he directed that such sum be set apart, and the use applied to the support and maintenance of G.'s issue surviving during their minority, to be equally divided between them when the youngest should become of age. Testator did not purchase a house for G. during his lifetime, but permitted her to live, rent free, in one of his own houses, though this was not necessary for her support.  Held, that there was nothing on the face of the will to indicate that the legacy to G. was entitled to preference in payment over other legacies.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 2102; Dec. Dig. § 806.*]

2. WILLS (§ 804*)—LEGACIES—PREFERENCES.
   A general legacy will not be accorded preference over other general legacies in the same will, unless given for support and maintenance of a near relative, otherwise unprovided for, or for the education of such relative, or where it is in lieu of dower, etc.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 2100; Dec. Dig. § 804.*]

3. WILLS (§ 486*)—LEGACIES—PREFERENCES.
   The burden of establishing that a general legacy is entitled to a preference is on the legatee asserting it.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1016–1022; Dec. Dig. § 486.*]

4. WILLS (§ 487*)—CONSTRUCTION—GENERAL LEGACIES—RIGHT TO PREFERENCE.
   On an issue whether a general legacy, bequeathed to testator's niece on condition that he had not conveyed a house to her, was entitled to a preference, evidence showing the situation of testator's family, the condition of his estate, etc., was admissible; but evidence concerning his declarations and acts subsequent to the execution of the will was incompetent.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1026–1032; Dec. Dig. § 487.*]

5. WILLS (§ 486*)—CONSTRUCTION—EXTRINSIC EVIDENCE.
   Where the language of a will is reasonably clear and sufficient in itself, interpretation is neither necessary nor proper, and extrinsic evidence is incompetent to aid in its interpretation.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1016–1022; Dec. Dig. § 486.*]

Judicial settlement of the accounts of Robert Lloyd and Chauncey L. Giles, as executors of William Gibson, deceased.  On report of a referee, sustaining objections of Essie Kate Giles to the proposed distribution and claiming preferred payment of a legacy to her.  Exceptions to report sustained, and objections overruled.

Theodore L. Frothingham, of New York City, for executors.

Lyon & Smith, of New York City (Edward P. Lyon, of New York City, of counsel), for objectant.

Lawrence S. Coit, of New York City, for Durant F. Denton, administrator.

Winter Russell, of New York City, special guardian.

FOWLER, S.  Upon the final accounting of the executors, Essie Kate Giles, the legatee named in the third paragraph of the testator's will, objects to the proposed distribution of a balance of $5,775.31 amongst all the legatees named in the will, and lays claim to the entire balance, asserting that the legacy bequeathed to her in the third paragraph is preferred.  The learned referee has filed his report in favor of the above contention, and upon the exceptions of other legatees the question now comes before the surrogate for review.  I have some hesitation in differing with so learned and conscientious a referee as Mr. Jessup, but I am compelled to follow the dictates of my own conscience, without, however, any assurance that my conclusion is more accurate than that of so learned a specialist in this branch of professional knowledge.  If the reasons I assign do not bear out my conclusion, then I should have confirmed the report of the referee.

The testator died a resident of New York county in the year 1901, and on January 21, 1902, his will was here probated.  By a decree entered January 7, 1914, a former accounting of the executors was judicially settled, and it thereby appears that the executors received a gross estate of $103,952.88.  The moneys which the executors disbursed were, with the exception of $9,500 paid out of the income to Miss Gibson, the life tenant mentioned in paragraph second, all disbursed to meet the debts of the testator and the expenses of administration.

The will is dated December 29, 1888.  At that time the testator was engaged in the lumber business and was prospering.  In the interim between the making of the will and its probate testator met serious business reverses and his commerce dwindled.  The numerous legacies bequeathed aggregate, in addition to a life annuity, the sum of $39,000.  None of these legacies can be paid in full, and if the contention of Mrs. Giles be sustained hers will be the only legacy which will be satisfied even in part.

[1]  It is urged on behalf of Mrs. Giles that both the language of the will and the extraneous circumstances, evidence of which was offered and taken, show an intention on the part of testator to prefer her legacy.  Paragraph third of the will of testator provides as follows:

"Third. To Essie Kate Giles, wife of Chauncey L. Giles, Jr., I give and bequeath the sum of fifteen thousand ($15,000) dollars to be paid to her within one year after my decease, provided I shall not have given her by deed a house during my lifetime and in accordance with my oft expressed intention, in which case this bequest shall be canceled by such deed; but in case she should not be living me surviving then I direct such sum to be set apart and the use thereof applied to the support and maintenance of her issue me and her surviving, during their minority; said principal sum to be equally divided between them when the youngest shall become of full age."

In effect the contention is made on behalf of Mrs. Giles that she was not only the favorite niece of testator, but that the relation they bore

to each other was really that of parent and child; that the testator had supported her in his lifetime and recognized the obligation to make provision for her support after his decease; and that the language of the will expressly indicates an intention to give a legacy of $15,000 in performance of a long-cherished purpose to make such a bequest. It is obvious that here we have a case of interpretation of a will. It seems to have been assumed on the hearing that to enable an interpretation to be reached extrinsic evidence was necessary and competent. This is the great point of the case.

On the hearings before the learned referee, considerable testimony was taken to prove that Mrs. Giles was the favorite niece of the testator. It appears that the testator was unmarried, and other than his sister, Miss Gibson, mentioned in the second paragraph of the will, testator's nearest relatives were his nephews and nieces. Mrs. Giles was born in 1854, and when she was 3 years of age her parents died. She then went to live with the testator and his sister, Miss Gibson, and so lived with the testator until 1883, when, at the age of 29, she was married to Mr. Giles from her uncle's house. After this niece had become 16 years of age and old enough to look after the household affairs, that duty, it appears, was intrusted to her by testator. After her marriage, Mrs. Giles and her husband boarded for a time, and then for a period of 17 years, beginning in 1884, lived in one or other of the dwelling houses belonging to the testator. Mr. Gibson allowed his niece to live in these houses free of rent. The evidence discloses that Mrs. Giles had no property of her own, either when the will was made or when the testator died. But her husband testified that he was engaged in the dry goods business, and made a good, fair living, and was amply able to support his wife. He did not believe that the present of free rent from testator was necessary for the support of himself and his wife, but he did believe that the free rent was so given, with the understanding that the testator was going to give Mrs. Giles the house, and not because she was in poverty or needed assistance. Evidence was also taken in effect showing that the testator had frequently looked at houses with a view to purchasing one as a residence for Mrs. Giles. In 1890 and again 1900 testator looked at houses. There is no proof of any such efforts on his part prior to 1888, when the will was made.

The testimony does show that Mrs. Giles was the testator's favorite niece, but no inference from that fact is permissible that testator deemed himself under an obligation to provide for her support. No proof was offered showing gifts to Mrs. Giles, other than an allowance to her by testator of free rent, and this gift apparently was made, not so much to assist Mrs. Giles, as to allow her to take advantage of a vacant dwelling. No inference, I think, can be drawn from the language of the third paragraph of the will in favor of Mrs. Giles' legacy. All that the testator states therein is that he gives $15,000 to his niece, and that he attaches to such gift the condition that it shall not be effective unless during the lifetime of testator he shall have failed to perform his oft-expressed intention to provide a residence for her; that is, testator does not state that he makes the legacy in discharge of any obligation to perform his promise, but that the legacy is given with the idea of providing sufficient money to perform his promise after his death, should

it not be performed during his lifetime. There is no language indicating a purpose to make the legacy payable in all events, or to distinguish it from the other legacies given in the subsequent paragraphs of the will. The testator sought to explain his reason for wishing to impose a condition nullifying the bequest in a certain event, namely, that he did not wish his niece to have the benefit of a double gift. His only expressed reason for making the large legacy $15,000, instead of another amount, was that he wished to provide for the performance of an obligation which he expected in all likelihood to discharge in his lifetime.

The provisions in the will, other than those for the benefit of Miss Gibson and Mrs. Giles and a few minor gifts to business associates of the testator and charities, contain bequests to nieces and nephews, either of the whole blood or of the half blood, or husbands or wives of nieces and nephews. While the testator's regard for Mrs. Giles as his favorite niece might prompt him to make a larger bequest in her favor, as he has done, no conclusion can be reached from the face of the will itself that the legacy for her benefit was to be paid at all events, irrespective of the insufficiency of the testator's estate to discharge the remaining portions of the will. A direction in paragraph third of the will that the legacy to Mrs. Giles is to be paid her within one year is relied upon to indicate an intention to prefer her legacy. But a distinction must always be made between a preference given by a will in the time of payment and one in the assets out of which payment is to be made. Blower v. Morret, 2 Ves. Sr. 420; Matter of McKay, 5 Misc. Rep. 123, 25 N. Y. Supp. 725; Trustees of Harvard College v. Quinn, 3 Redf. Sur. 514.

[2, 3] It is urged by counsel that legacies for support and maintenance are not in the same category with those which may be deemed legacies given as a mere bounty. Numerous authorities are cited in support of this rule of law. An examination of the cases cited discloses that in each instance the legacy was not a direct gift of a particular sum of money, but the creation of a trust fund for support and maintenance of either a minor child or a near relative to whom a similar obligation might be considered owing, or else it was a bequest of an annuity in lieu of dower.

In Bliven v. Seymour, 88 N. Y. 469, a preference was not sustained, but the rule of law is stated as follows:

"And though a general legacy may sometimes have a preference over other general legacies in the same will, it is only in certain recognized cases. Where it is given for the support and maintenance of a near relative, otherwise unprovided for (Scofield v. Adams, 12 Hun, 370), or for the education of such relative (Petrie v. Petrie, 7 Lans. 90), or where it is in lieu of dower and so may be deemed a purchase price (Blower v. Morret, 2 Ves. Sr. 420), such general legacy has been granted a preference."

The court further stated that in doubtful cases the courts lean against a construction which makes the legacy specific.

In Scofield v. Adams, cited in Bliven v. Seymour, the will of the testatrix gave her husband $5,000, to be put at interest and to be used for his comfort and benefit. It was there held that the bequest in favor of the husband was entitled to a preference, because it was made for his support and maintenance. It is worthy of note that there was no out-

right gift of the principal of the $5,000, and that the principal was bequeathed to other beneficiaries. The court construed the provision in favor of the husband to mean that he was to receive his support and maintenance, and that the other legatees were only to share in the estate after sufficient provision had been made for the husband.

In Petrie v. Petrie, also cited in Bliven v. Seymour, the testator directed his executor to provide an annual sum for the support of infant children. It was held that this annuity was one properly preferred. In Stewart v. Chambers, 2 Sandf. Ch. 382, annuities for the support of testator's wife and infant children were held to be continuing charges against the income of the entire estate, instead of being limited to the income of a particular year. A similar result was reached in Matter of Chauncey, 119 N. Y. 77, 23 N. E. 448, 7 L. R. A. 361, in regard to an annuity for an adopted minor child. That case relied upon Stewart v. Chambers, supra, and also Cochrane v. Walker, 4 Dem. Sur. 164, Booth v. Coulton, L. R. 5 Ch. Appeals, 684, and Pitt v. Lord Dacre, L. R. 3 Ch. Div. 295. In commenting upon Stewart v. Chambers the court stated that:

"This conclusion was reached in analogy to the principle that legacies for the support and maintenance of a wife and children do not abate with the general legacies."

But if we examine the cases cited in Matter of Chauncey, we will find that all that the court had in mind was that, where annuities are given for the support and maintenance of a wife or minor children, such annuities must be paid before any income whatever can be applied to the satisfaction of other provisions in the will. Cochrane v. Walker is authority for the proposition that an annuitant who was the daughter of the testator was entitled to have all arrears of lean years first satisfied out of the income of later years before other legatees could share in the estate. Booth v. Coulton likewise held that annuities were continuing charges, and the court did not reach the conclusion on the ground that the annuitants were children. In Pitt v. Lord Dacre an annuity was given to a daughter out of the rents and profits of a parcel of the testator's real estate, and it was held that arrearages accruing during years when the estate was a waste should attach to the income arising during prosperous years.

There are two early cases of some note, Lewin v. Lewin, 2 Ves. Sr. 415, and Blower v. Morret, Id. 420, frequently cited to sustain the proposition that legacies for the support and maintenance of children or in lieu of dower are to be treated as preferred. If we examine them, we will find that in the former case the provision held to be preferred was an annuity for the wife and children of the testator for their support and maintenance. In the latter case the legacy was in lieu of dower.

[4] The burden of establishing a preference is always upon the legatee asserting it. Matter of Wenner, 125 App. Div. 358, 110 N. Y. Supp. 694. Mere uncertainty cannot give rise to speculation in favor of a preference. Roper on Legacies, vol. 1, p. 420. The courts have frequently refused to award a preference to such cases as this. In Matter of Wenner, supra, although the legacy was one to a near relative, it was held to abate with the other general legacies, because there was nothing

in the record to show that the sister, in whose favor the legacy was given, was otherwise unprovided for. In numerous other cases a similar result was reached, because the court did not find sufficient to indicate an intention to prefer. Matter of Hinman, 32 Misc. Rep. 536, 67 N. Y. Supp. 459; Trustees of Harvard College v. Quinn, supra; Wetmore v. St. Luke's Hospital, 56 Hun, 313, 9 N. Y. Supp. 753.

The legacy now before me to Mrs. Giles, it will be observed, was not expressed to be given to her for her support and maintenance; but it seems that the testator made the bequest in order to provide a house for her home. Not only is there nothing upon the face of the will to indicate an additional intention to make the legacy one for the support and maintenance of Mrs. Giles, but, on the contrary, there is in the will itself an express declaration by testator of another reason for the legacy. Furthermore, the evidence discloses that Mrs. Giles had other means of support, so that the legacy in her favor cannot be brought within the description of the legacies referred to in the rule relied upon by her counsel.

In reaching this conclusion consideration has been given to some of the parol evidence taken by the learned referee for the purpose of explaining the intention of the testator. The surrounding circumstances calculated to place a court of construction in the place of testator are often regarded as competent evidence in a case of construction. Such circumstances, for example, as the situation of testator's family and the condition of his estate, are often considered by courts of construction for the purpose of explaining the language or elucidating the meaning of the testator. Gardner v. Heyer, 2 Paige, 11; Wolfe v. Van Nostrand, 2 N. Y. 440; Stimson v. Vroman, 99 N. Y. 74, 1 N. E. 147; Williams v. Freeman, 83 N. Y. 561; Morris v. Sickly, 133 N. Y. 459, 31 N. E. 332; Fries v. Osborn, 190 N. Y. 35, 82 N. E. 716, 19 L. R. A. (N. S.) 457; Matter of Title Guarantee & Trust Co., 195 N. Y. 339, 88 N. E. 375; Ely v. Ely, 163 App. Div. 320, 334, 148 N. Y. Supp. 691; Matter of Rutherfurd, 196 N. Y. 315, 89 N. E. 820.

Some of the extrinsic evidence taken by the learned referee was competent, while the rest ought not, I think, to be considered by me upon a construction of the will. Not only was proof offered and received of the circumstances of the testator and his situation and relationship in regard to the legatees, but also evidence of his declarations and conduct, showing an intent to give Mrs. Giles a house. In Morris v. Sickly, 133 N. Y. 456, 31 N. E. 332, where the question was whether a legacy was charged upon the real estate, evidence was held incompetent which showed the testator's circumstances after the making of the will. The court said:

"Circumstances surrounding a testator at the time of the execution of his will may be given in evidence, so that the court may see the facts as he saw them, and thus arrive at his intention, where the language alone is of doubtful import. The matter to be determined in the construction of a will is: What did the testator intend at the time of its execution? And when that intention is ascertained, it must have effect, if not in conflict with any law. Clearly, circumstances occurring long after the execution of a will could not have been within the contemplation of the testator, and could, therefore, throw no light upon the meaning of the language which he then used. While a will is in some sense ambulatory as to the objects and subjects with which

it deals, yet it is not ambulatory as to the meaning of the language used by the testator and the intention and purpose which controlled the disposition of his property. That intention and purpose must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring events."

I am satisfied that the declarations of the testator were in this case inadmissible for the purpose of construing his will. Reynolds v. Robinson, 82 N. Y. 106, 37 Am. Rep. 555; Mann v. Mann, 14 Johns. 1, 7 Am. Dec. 416. It is a very old rule in cases of this kind that parol declarations of a testator are inadmissible to control a written will (1 Powell on Devises, 465), except in the case of a latent ambiguity or to rebut a resulting trust. Declarations made after execution are inadmissible as evidence of intention. Cromer v. Pinckney, 3 Barb. Ch. 466. Even contemporaneous declarations, when part of the res gestæ, are not receivable to vary or contradict a document. Kirk v. Eddowes, 3 Hare, 509, 522. So the testimony taken by the learned referee of the testator's efforts and endeavors to purchase a house for Mrs. Giles was incompetent. In view of the positive language of the will, and in view of the conclusion reached, no harm, however, followed its reception.

[5] Before concluding, let me advert to what I regard as well-established principles in a case of interpretation. Judicial interpretation of a will or other document is an effort primarily to ascertain the meaning of a testator or the application of the language expressed in the document to the facts of a given case. When the language of a will is reasonably clear and sufficient in itself, no interpretation is proper or necessary, nor is any extrinsic evidence admissible in such a case to show that the testator used the words with any peculiar signification. Matter of Raab, 79 Misc. Rep. 185, 188, 139 N. Y. Supp. 869; Emerton. De Conjecturis, 68. If the words of a will bear an ordinary and settled meaning, it is only in very special cases that another meaning may be affixed to them. A will, like other documents, should wherever possible be left to speak for itself. It is only, I think, when a will is uncertain, ambiguous, or doubtful that extrinsic evidence is allowed to be taken (Ritch v. Hawxhurst, 114 N. Y. 512, 21 N. E. 1009), and then the nature of the extrinsic evidence is very restricted.

The exceptions are sustained. The third, fourth, fifth, and sixth objections filed by the special guardian were not, however, disposed of by the referee, because the conclusion which he reached rendered them immaterial; but, as they have now become material, this proceeding should be referred back to the referee, to hear and determine said objections.