In the Matter of the Judicial Settlement of the Account of Proceedings of ROBERT LLOYD and CHAUNCEY L. GILES, as Executors, etc., of WILLIAM GIBSON, Deceased.

ESSIE KATE GILES, Appellant; ROBERT LLOYD and CHAUNCEY L. GILES, as Executors, etc., and Others, Respondents.

*(Supreme Court, Appellate Division, First Department, January 15, 1915.)*

WILL—PREFERRED LEGACY—INTENT OF TESTATOR—EVIDENCE—EXTRANEOUS FACTS.

The question as to whether a testator intended to prefer a certain legacy over others, so that it should be paid in full and the others abate *pro rata* where the assets are not sufficient to pay all, may be determined not only from the terms of the will itself, but also from extraneous circumstances, including the testator's relations with and conduct toward the legatee.

Thus, an intent to prefer such legacy may be found where the testator, a bachelor, treated the legatee as his child during his lifetime, and provided her with a home without cost after her marriage, and promised thereafter to provide her a permanent home, which should go to her issue should she not survive him, and he differentiated such legacy from other legacies in that he ordered it to be paid within a year.

LAUGHLIN, J., dissented.

APPEAL by Essie Kate Giles from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 1st day of December, 1914, sustaining exceptions to the report of a referee herein and remitting the proceeding to the referee for further hearing.

Edward P. Lyon, for the appellant.

Lawrence S. Coit and Winter Russel, for the respondents Denton and Clark.

Order reversed and exceptions to referee's report overruled on the opinion of the referee, and the matter remitted to the

Surrogate's Court to enter a decree in accordance with the referee's report, with costs to both parties and the special guardian payable out of the estate. No opinion. Order to be settled on notice.

Present — INGRAHAM, P. J., McLAUGHLIN, LAUGHLIN, SCOTT and DOWLING, JJ.; LAUGHLIN, J., dissenting.

The following is the opinion of the referee:

HENRY W. JESSUP, Referee.— The executors of the last will and testament of William Gibson, deceased, have filed tehir account, which is a final account, showing a balance of $5,-775.31. There was offered in evidence bofere me their accounting, had in August, 1913, which was an intermediate accounting, and which fully disclosed the obligations and various liens upon the property of the decedent which had arisen or been created long subsequent to the making of his will, which was dated in 1888, and had caused a very substantial shrinkage in the quantum of the estate. Accordingly, the balance above specified is totally insufficient to carry out the provisions of the will, making pecuniary bequests amounting to some $38,000.

To this account an objection was filed by Essie Kate Giles, beneficiary named in the 3d paragraph of the will, claiming that her legacy of $15,000 was a preferred legacy. The special guardian appointed for an infant legatee filed objections attacking the propriety of certain disbursements and averring that the executors had not accounted for all the assets of the estate. All the persons interested appearing on the hearings before me other than Essie Kate Giles took issue with her contention that she was entitled to a preference, and, in view of the determination I have reached, the consideration of the other objections becomes immaterial, because, as the parties in whose behalf they were filed will not, in the view I take in the case, be entitled to any distributive share, I deem it unnecessary to pass

upon the propriety of the charges for which vouchers have been duly filed and to which the special guardian made objection because Essie Kate Giles, to whom distribution will be made if the view I take of the law be correct, has not objected to the propriety of these items and her counsel did not require any justification of their reasonableness.

In support of the contention that the legacy to Essie Kate Giles is a preferred legacy, the following considerations are urged, which I may reframe as follows:

1. The language of the will as expressing a clear and explicit testamentary intent.

2. Proof of extraneous circumstances with regard to the legatee's relationship to and dependency upon the testator at the time of making the will and from that time until his decease.

3. The order of the legacy in the will as illuminating the question of intent to prefer.

4. Certain *cancelli* or marks which upon the probate of the will were shown to have been made by the testator but found by the surrogate in admitting the will to probate to have been not so made as to effect a revocation of the particular parts sought to be canceled, but presumably to be merely evidences of a revocatory intent not actually effectuated by the making of a new will; not an act of revocation sufficient to comply with the statute; * so that the whole will was admitted to probate. A copy of the will showing these marks or *cancelli* and also showing notes by the testator indicating the reason for making these cancellations in certain cases, namely, that the particular legatees were dead, was offered in evidence and is submitted with this report.

Careful briefs have been submitted and I have given to the cases discussed in opposition to the claim of preference careful consideration. And in view of the fact that however small

* See 2 R. S. 64, § 42; now Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18), § 34.— [Rep.

their abated shares would be, a considerable number of legatees will receive nothing whatever, if my view of the law be correct, I have deemed it necessary to write a short memorandum stating my reasons for the conclusion I have reached.

The only effect that I can attribute to the *cancelli* upon the will as it was admitted to probate is merely that the testator at the time these marks were made (whenever that was) intended that these particular legacies should not operate upon his decease, but enough of these pecuniary legacies were left (assuming that the others had been held to be revoked) to present exactly the same question, namely, are they not all general pecuniary legacies, and, therefore, under the rule, must they not all abate ratably? For it is obvious that no construction of the will, however forced, could create a specific legacy to Essie Kate Giles out of the 3d clause. Since the *cancelli* already decreed to have no revocatory effect throw no light upon the intent of the testator to prefer the legacy to Essie Kate Giles over the other pecuniary legatees, the considerations remain as to whether the language of the will with proof of the extraneous circumstances show such a clear and explicit intent that at all events Essie Kate Giles must be paid, and differentiates her legacy from the others, which, of course, come within the general rule that they are "mere bounty." If we take the provision that the legacy shall be paid within a year alone, we must recognize the rule as having been long established, and by authority which cannot be disputed or overruled, that such a preference in point of time of payment does not affect the operation of the rule if later it transpire that there is a deficiency of assets. It may be that the executor has complied with the direction of the will and has prematurely paid, and it may be also that he failed to exact a refunding bond, but as between legatees the rule still operates that they must abte ratably, and the whole subject is carefully covered by the late Hon. DELANO C. CALVIN in *Trustees of Harvard*

College 1. Quinn (3 Redf. 514). But when the legacy to Mrs. Giles is differentiated from the other legacies by this direction to pay before the statutory time * and no such provision is made in regard to these other legacies, while that consideration alone cannot have the effect claimed on behalf of Mrs. Giles, yet it is certainly a material circumstance to be weighed in considering the general intent to prefer, asserted to have been in the mind of the testator.

Now this intent to prefer is based upon two considerations, the one that Mrs. Giles stood to the testator in what is described in the Transfer Tax Law† as the mutually acknowledged relation of parent and child. It was proved that she became an orphan when she was between two and three years old; that he promptly took her into his home, which was presided over by a maiden sister, he himself being a bachelor; that she grew up as his child; that he maintained and educated her and that she was married from his house. All the circumstances that were testified to were the kind of circumstances which would be probative and determinative on the question of whether the mutually acknowledged relation of parent and child existed if this were a proceeding under the Transfer Tax Law and she were claiming exemption from its provisions under that particular definition of persons or classes exempt. That he treated her as his child; that he was responsible for her support; that she lived with him, and that this relationship of affection continued to the time of his death, in spite of her marriage, is clear upon the record before me. But the cases which emphasize this feature as tending to indicate an intent

* See Code Civ. Proc., § 2721; now Code Civ. Proc., § 2688, as amd. by Laws of 1914, chap. 443.— [REP.

† See Tax Law (Gen. Laws, chap. 24; Laws of 1896, chap. 908), § 221, as amd.; now Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62), § 221, as amd. by Laws of 1910, chaps. 600, 706; Id. § 221a, added by Laws of 1911, chap. 732.— [REP.

to prefer are all characterized by the limitation or specification that the legacy must clearly appear upon its face to be for support and maintenance, and that the legatee claiming preference is not otherwise provided for in the will. From this viewpoint it is obvious, first, that she is not otherwise provided for in the will.

But in respect to the question of support and maintenance, the testimony as to the relationship of the parties in this particular, after her marriage, becomes important, and, in my judgment, decisive. She was married from her uncle's house in 1883 and she was then about twenty-nine years old. That is to say, his support of her as a member of his household and family had continued after her majority for a number of years. Her husband was upon the stand and testified that he had supported his wife, but no particulars were entered into on direct or cross-examination as to his ability to maintain her, beyond what he had done, whereas, on the other hand, it was clearly shown that at all times since her marriage her uncle, the testator, had provided her husband and herself with a material part of their support, i. e., the use, rent free, of one or another of the houses which he owned in New York city or in New Jersey. Clause 3 of the will contains a solemn statement by the testator of his oft-expressed intention to provide her a home. The witnesses who were examined testified to the existence of this intention and his various attempts (though not carried to completion) right along from the time of the making of the will and nearly up to the time of his death to carry it out; the examination of various houses, their rejection on account of locality or availability by Mrs. Giles or by the expectant donor. One house, it was testified, he rejected because at the last moment he discovered a closet full of old medicine bottles and he decided that the house could not be a healthy one to live in if the previous tenants had needed so much medicine.

And while he had made these various *cancelli* on his will,

showing a scrutiny of it after the time of its making, he did not in any way mark over or change the clause providing for Mrs. Giles. There is enough in the record to show that what he calls in the will his "oft-expressed intention" to give "her by deed a house during my lifetime" (which proposed gift by the terms of the clause he intended should inure to her issue, thus showing that his intent to give her a home was not limited to her life, but was intended to give to her estate in fee which would pass to her heirs) was in the nature of a promised gift partially performed; that the gift was not so much a promised gift of realty as a promise of purchase, that is, to provide the funds to purchase a home, which promise was, as I say, partially performed by giving her the equivalent of the use of such a home until the actual premises should be purchased, and giving it to her on terms even more favorable than ownership, because the title to the house she occupied remained in him, and he, presumably, paid the taxes and maintained the repairs thereon, while she and her husband secure the use of the home for the time being rent free. It is a generally recognized fact that the item of rent in the average household sustains the relation of one-fourth, if not one-third, to the gross household expenses of the particular family not living in tenements. So that while her husband supported her from the time she was married at twenty-nine, it was always with this material aid to the extent of at least one-fourth of the maintenance expenses of the household, in that she received, rent free, the use of a house. Assuming that the will had been silent on this subject and had contained no legacy to Mrs. Giles, it may be doubtful whether the promise to give could have been enforced against the estate, by action, unless this single ground of partial performance could have been urged in support of such a claim. But these circumstances are most material in differentiating the legacy to Essie Kate Giles from the class of "mere bounty," because general legacies, being deemed to be the

"mere bounty" of the testator, must abate ratably. If a particular legacy, while not specific, is shown by the will and by attendant circumstances not to be mere bounty but to be in discharge of a debt or to be a provision for the maintenance and support of a near relation not otherwise provided for, or to be in performance of a solemn promise, then it is clearly taken out of the class of "mere bounty" legacies and accordingly, whatever might be the result of any particular one of the considerations above weighed applied to this 3d clause of the will, in which case it well might be that any one of them taken alone would be insufficient to sustain the claim to a preference, taking them all together, it brings the case within the intent of the rule that, just as the Statute of Distribution may be set aside by a valid will, absolutely cutting off those who would otherwise share in an estate, so an administrative rule of abatement may be nullified and must be set aside if the intent of the testator to that effect is clear and explicit in the particular case. In other words, as I find in the text books and in the cases, there is no positive rule for determining whether a particular legacy is to be paid in full at all events, or whether, in case the estate is insufficient to pay the legacies contained in the will, each case will depend upon a consideration of all the material provisions of the will to be construed and of the extraneous circumstances which bear upon the question of intent. This is the rule laid down in Pierrepont v. Edwards (25 N. Y. 128), and the extraneous evidence which is admissible under the rule laid down in that case has been admitted in most recent cases. (See Ely v. Ely, 163 App. Div. 320, 334, where Mr. Justice CLARKE observes: "The extraneous evidence produced in this case, and of which the heirs at law complain upon this appeal, appears to me to have been clearly admissible as showing the surrounding circumstances and conditions under which the testamentary document was executed, the relation that the testator bore to his family, the scheme of his disposition, * * *.

It is to explain and support the will, and not to destroy it. It is the kind of evidence which, as I understand it, the Court of Appeals has many times determined to be admissible.")

Mr. Redfield, in his work on Law and Practice of Surrogates' Courts (7th ed., § 759), says that the general rule as to legacies which the testator intended should be paid in full and at all events is that they are not subject to abatement with general legacies. This is always true when these legacies are charged, as he remarked in the text, upon a particular fund, or upon real estate; but where this is not the case, it turns upon a careful consideration of all the material provisions of the will and upon "Extrinsic circumstances which bear upon the question of intent."

Essie Kate Giles was the only person who sustained to this bachelor testator in his lifetime the relation of child. She was practically adopted by him; she lived with him; she was dependent upon him; she married from his house. After her marriage he provided her with a home, and promised to provide her a permanent home. He intended to carry this promise into effect and repeated attempts were made to do so. He stated solemnly in his will, made shortly after her marriage, that he had oft expressed his intention to provide her a home. He amplified this intention by indicating that, if she should not survive him, her issue would have what would have provided her a home. He set a pecuniary value on the gift which he had intended to make, $15,000. While the intention was unexecuted *inter vivos,* he at all times had given her the pecuniary equivalent for the time being of the actual deed to her of a house, plus the charges of taxes, insurance and repairs. As I consider the other general legacies, he directed that she should be immediately paid within a year, whatever might happen to the others by operation of statuary rules. In respect to none of these other general legacies is there anything that takes them out of the "mere bounty" class. All these

considerations conspire to convince me of his intent to prefer this person and to provide for her support and maintenance, though married, in this material and important respect of a home.

I have prepared a report with appropriate findings and conclusions to carry out this view of the facts.